MINNIE FELDMESSER ET AL., RESPONDENTS, v. SAMUEL
LEMBERGER, APPELLANT.

Argued October 29, 1924—Decided February 19, 1925.

1. That one who falsely represents an ownership in property that
   does not exist, and thereby induces another to enter into a con-
   tract to purchase, that which the vendor has no right to sell, is
   evidence of a wrongful deception.
2. In an action for deceit, at law, growing out of a contract made
   by the defendant to sell lands, of which he represented himself to
   be the owner, and of which, in fact, he was not the owner, the
   plaintiff may recover his costs and expenses in an unsuccessful
   Chancery suit to enforce the specific performance of the con-
   tract, and the costs of such unsuccessful suit are not *res adju-
   dicata*, but are such as flow naturally and directly from the
   wrongful act of the defendant.

On appeal from the Supreme Court.

For the appellant, *Joseph Siegler* and *Philip J. Schotland.*

For the respondents, *David M. Salz.*

The opinion of the court was delivered by

LLOYD, J.   In 1919 Charles Surye and Minnie Feldmesser,
his sister-in-law, plaintiffs in the court below, were the
tenants in possession of premises known as No. 288 Hillside
avenue, Newark, and were conducting there a confectionery
business.   They held under a lease signed "Ida Klein," and
this lease was about to expire.   In this posture of their rela-
tion to the property Samuel Lemberger, one of the defendants
below, came to them and informed them that he would not
renew the lease, but would sell the property and give the
plaintiffs the first opportunity to purchase at a price of $15,-
000; that a man was coming the next day who would pay
$15,000, and that, if they declined to buy, they would have
to move.   The plaintiffs, being anxious to protect their busi-
ness and to remain where they were, accepted the offer and

made a deposit of $10. The following day a written agreement was signed and the balance of a $500 deposit was paid. The agreement was signed by the plaintiffs and by Lemberger and his wife, Rebecka. Before the contract was made Samuel Lemberger represented in positive terms to the plaintiffs that he was the owner of the property, and explained the fact that the lease of the property was signed by him in the name of Ida Klein as lessor as having been done for business reasons. Subsequently, the defendants refused to carry out the agreement, Samuel Lemberger giving as the reason that his wife "did not want to sign." Thereupon the plaintiffs, relying upon the representations and the *bona fides* of their contract, began a suit in Chancery to compel specific performance of the contract. This suit proceeded to trial before a Vice Chancellor, and the defense set up was that Ida Klein was the real owner of the property, and that Lemberger was without authority to make the contract. This question was tried out and resulted in a decree in Chancery compelling performance of the agreement. On appeal the decree was reversed on the ground that Ida Klein was the owner of the property, and that, under the circumstances, the defendants in that suit could not be compelled to convey that which did not belong to them. The result was that the complainants were compelled to pay the costs of the proceedings in Chancery and in the Court of Errors and Appeals. The present action was then instituted in the Supreme Court to recover the moneys thus paid out in the endeavor to compel compliance with the contract. The suit is in form an action of deceit, and rested on the fraudulent representations of the defendants in inveigling the plaintiffs into the making of the contract and the consequent expensive, but fruitless, efforts to have it carried out.

The trial of the case resulted in a nonsuit as to Mrs. Lemberger and in a verdict for the plaintiffs against Samuel Lemberger, and the latter appeals to this court.

A reversal is asked upon three grounds—(1) that there was not sufficient evidence to prove a knowingly false representation; (2) that the plaintiffs could not recover as dam-

ages the costs incurred in the Chancery litigation, and (3) that the plaintiffs were barred and the claim *res adjudicata* by the final decree in the Court of Chancery.

None of these reasons are, in our opinion, sufficient to justify a reversal of the judgment. Taking them up in order, it is quite apparent that no extended discussion is required to demonstrate the insufficiency of the first. That one who falsely represents an ownership in property that does not exist, and thereby induces another to enter into a contract to purchase that which the vendor has no right to sell, is evidence of a willful deception, requires no argument according to all of the canons of logic. The ownership of real property of the magnitude here involved is not such a trivial incident in the life of the ordinary person as to create an honest uncertainty of mind respecting its ownership. It is difficult to believe that Lemberger was under such a misapprehension respecting the true title to the subject-matter of his contract as to rest under the delusion that he was its rightful owner. At least, his integrity of purpose was a question for the jury, and to it the court committed it.

The next contention is one of greater difficulty, but here, also, we think the court below was right. It presents the question of whether the costs and expenses in the Chancery suit were proper elements of damage. The case is unusual in its facts; the research of counsel has discovered but one of parallel character. It is that of *Randall* v. *Tyrmen,* 88 *Eng. C. L. Rep.* 518, and was decided in the year 1580. In it a recovery was had against an architect for the costs incurred in an unsuccessful action against an alleged principal for the false representation by the architect that he had authority to bind the defendant therein, and the case is in accord with the conclusion we reach.

It is the boast of our common law that for every wrong there is a remedy, and upon this foundation is built the splendid structure of our jurisprudence. Applying concretely this principle, the courts have endeavored to make the remedies complete and effective, and to this end have declared the law which constitutes our present guide. On the

one hand the law, as thus declared in dealing with the right of recovery, excludes those damages, which are remote, speculative and fanciful. On the other hand, it takes account of those damages, which are the natural and proximate result of the wrongful act (*Wiley* v. *West Jersey Railroad Co.,* 44 N. J. L. 247), and of those which must have been in the contemplation of the wrong-doer at the time of his offending. *Crater* v. *Benninger,* 33 *Id.* 513. In the last-named case (similar to the present in that it was an action for deceit) Chief Justice Beasley, speaking for the Court of Errors and Appeals (at *p.* 517), says: "The rule to be applied in cases of this character is that the defendant is responsible for those results, injurious to the plaintiff, which must be presumed to have been within his contemplation at the time of the commission of the fraud."

Tested by these rules, what could be more natural, or more clearly within the contemplation of the vendor, than that the vendees, desirous of owning the property, should seek to enforce the contract which they believed they held in good faith, by a suit to compel its performance, and what more natural and direct loss or damage which they should sustain than the costs and expenses incurred in obtaining a decree for such enforcement and for maintaining it in a court of review. The circumstances are unusual, in that, perhaps rarely, is one foolish enough to make the representations and the bargain which the defendant in this case made, but this does not deprive the plaintiffs of the right to redress for the wrong done them by the unusual act. While the facts may be rare, the principles of law governing the transactions are trite and well settled.

The last point argued is that the costs and expenses incurred in the Court of Chancery were *res adjudicata,* because of the fact that these costs were required to be paid by the judgment of the Court of Errors and Appeals and the final decree of the Court of Chancery. This contention wholly misconceives the scope and purpose of the two suits. In Chancery the effort was to enforce the contract which the parties had entered into. The present suit is to recover the expenses of that litigation, not under the contract as made

between the parties, which alone was adjudicated in that case, but for the fraudulent representation of the defendant in inducing the plaintiffs to enter into the contract itself. There is nothing in common between the two causes of action. The defendant by his wrongful act started a train of circumstances which entailed the losses which the plaintiff sustained. These losses, arising, not by reason of the contract, but by reason of the defendant's deceit and fraud, were incurred by the plaintiffs in the enforcement of the contract which they believed to be honest and fair. It is not important that these losses were incurred through the media of litigation to enforce the contract. It is sufficient if they flow naturally and directly from the wrongful act, or are within the contemplation of the offending person at the time the wrong is committed.

Finding no error in the trial of the case, the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, LLOYD, GARDNER, JJ.   8.

*For reversal*—THE CHIEF JUSTICE, CAMPBELL, VAN BUSKIRK, CLARK, KAYS, JJ.   5.