776 A.2d 765 (2001)
169 N.J. 20
In the Matter of the ESTATE OF Herbert P. LASH, deceased.
Fireman's Fund Insurance Company, Plaintiff-Respondent and Cross-Appellant,
v.
Manuel Lopez, Jr.; Cheryl S. Lopez, his wife; Donald J. Meliado; Prudential-Bache Securities, Incorporated; L & L Associates; Lopez, Lopez & Cringoli; Louis H. Miller; and William R. Deni, Defendants, and
The Estate of Hildegard Lash, Defendant-Appellant and Cross-Respondent.
Supreme Court of New Jersey.
Argued November 28, 2000.
Decided July 2, 2001.
*767 B. Paul Katz, a member of the Florida bar, argued the cause for appellant and cross-respondent (Kraemer, Burns, Mytelka, Lovell & Kulka, attorneys; Mr. Katz and Wayne D. Greenfeder, of counsel and on the brief).
Timothy J. Korzun, Pennington, argued the cause for respondent and cross-appellant (Sheak & Korzun, attorneys; Mr. Korzun, J. Charles Sheak and Deborah I. Hollander, on the briefs).
*766 The opinion of the Court was delivered by ZAZZALI, J.
In this case, the administrator of an estate misappropriated the estate's funds. We must decide whether the estate can recover counsel fees incurred in the proceeding to recover the misappropriated amounts from the surety on the bond, or whether the estate is responsible for those fees. We also must determine the appropriate interest rate on the surcharged amount and the date on which the interest should commence.
The Appellate Division found that the surety was not liable for attorneys' fees on the bond. In re Estate of Lash, 329 N.J.Super. 249, 252, 747 A.2d 327 (App. Div.2000). Because we conclude that the estate is entitled to recover those fees as damages caused by the administrator's wrongful conduct, we reverse that determination and remand for entry of an order requiring the surety to pay the attorneys' fees incurred in the bond litigation. The panel also determined that the trial court did not abuse its discretion in awarding simple interest from the date that the complaint was filed. Ibid. We affirm that conclusion.

I
Herbert P. Lash died intestate in April of 1987. His sole heir at law was his mother, Hildegard Lash, a citizen of Florida. Later that month, Mrs. Lash executed a power of attorney to defendant Manuel Lopez, Jr., a stockbroker known to both Mrs. Lash and her son. In May 1987, Mrs. Lash renounced her right to administration of her son's estate and requested the appointment of Lopez as administrator. The following month the Passaic County Surrogate's Court appointed Lopez as administrator of the estate, conditioned upon a surety bond in the amount of $800,000. Defendant Fireman's Fund Insurance Company (Fireman's Fund) provided the *768 bond. At the time of Herbert Lash's death, his assets amounted to $751,786.39.
During the course of his service as administrator, Lopez misappropriated funds from Herbert Lash's estate. Because of those defalcations, in June 1992 Mrs. Lash revoked the power of attorney granted to Lopez and filed suit in Florida against Lopez, his wife, Cheryl, and Fireman's Fund alleging that Lopez breached his fiduciary duty "by failing to faithfully administer, account for and distribute to [Fireman's Fund] or other intended beneficiaries the assets or the proceeds of the assets of [Herbert's] estate."
In December 1992, the Florida circuit court granted Fireman's Fund's motion to dismiss based on lack of personal jurisdiction. The estate obtained a default judgment against defendants Lopez and his wife, Cheryl, in the amount of $800,000. However, the estate was unable to recover that amount from Lopez and his wife, who had both disappeared.
In January 1993, Fireman's Fund filed a complaint in Passaic County Surrogate's Court against Lopez, Cheryl, Lopez's attorney, Donald J. Meliado, and Mrs. Lash, among others. Fireman's Fund's complaint named Mrs. Lash in order to compel her to present all of her claims against Lopez, Cheryl, and Fireman's Fund. The complaint alleged that Lopez breached his fiduciary duty by failing "to account for, administer, liquidate, and distribute the assets and the proceeds" from the estate of Herbert Lash. By amended answer and counterclaim, the estate asserted that Fireman's Fund, as surety under the bond, was liable to the estate for the full amount of the bond, $800,000, together with interest, counsel fees, and cost of suit. The parties resolved, by stipulation, all issues except counsel fees and interest. The bond is silent on the issue of counsel fees. The estate contended that the counsel fees incurred in the proceeding should be charged to the bond. The Chancery Division rejected that contention, instead charging the fees against the corpus of the estate. The estate also requested "investment market rate" interest from the date of Lopez's defalcations. The Chancery Division awarded interest, but, contrary to the estate's request, awarded simple interest at the rates provided in Rule 4:42-11 from the date the complaint was filed.
On appeal, the Appellate Division affirmed the order of the Chancery Division requiring the payment of counsel fees by the estate and directing that simple interest be awarded, but modified the portion of the "order allowing the calculation of interest from January 1993 to provide that simple interest be calculated on the applicable amount from the date each improper use of the funds was made by the administrator." Lash, supra, 329 N.J.Super. at 264, 747 A.2d 327. The Appellate Division remanded "for further proceedings to determine the commencement date for calculation of simple interest on each defalcation that forms the basis for the amounts surcharged against the bond." Ibid.
The estate petitioned this Court for certification on the issue of attorneys' fees, and Fireman's Fund petitioned on the award of interest. We granted both petitions. 165 N.J. 136, 754 A.2d 1212 (2000). We now reverse the determination that the estate, rather than the surety, is liable for the attorneys' fees, affirm the award of interest, and remand for further proceedings consistent with this opinion.

II
In this case, we first address whether an administrator is liable to the estate for attorneys' fees incurred by the estate in the proceeding on the surety bond. If the administrator is liable for those fees, we *769 must then determine whether the administrator's surety also should be held liable for those fees. Finally, we consider whether the American Rule that disallows recovery of attorneys' fees incurred in litigation from an adversary in that litigation prohibits the award of fees against the surety in this case. We address each question in turn.

A
"One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for ... attorney fees ... thereby suffered or incurred...." Restatement (Second) of Torts § 914(2); accord Satellite Gateway Communications, Inc. v. Musi Dining Car Co., Inc., 110 N.J. 280, 285 n. 2, 540 A.2d 1267 (1988); Dep't of Envtl. Prot. v. Ventron, 94 N.J. 473, 504-05, 468 A.2d 150 (1983); see generally Pressler, Current N.J. Court Rules, comment 2.10 on R. 4:42-9 (2000) (discussing awards of counsel fees as damages); 22 Am.Jur.2d Damages § 618 (1988) (same). Thus, if a plaintiff has been forced because of the wrongful conduct of a tortfeasor to institute litigation against a third party, the plaintiff can recover the fees incurred in that litigation from the tortfeasor. Those fees are merely a portion of the damages the plaintiff suffered at the hands of the tortfeasor. See, e.g., Donovan v. Bachstadt, 91 N.J. 434, 448, 453 A.2d 160 (1982) (breach of contract action); Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 598, 388 A.2d 1265 (1978) (malicious prosecution action); Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 300, 225 A.2d 328 (1966) (action on insurance policy); Feldmesser v. Lemberger, 101 N.J.L. 184, 186-88, 127 A. 815 (1925) (fraud action); Katz v. Schacter, 251 N.J.Super. 467, 473-74, 598 A.2d 923 (App.Div.1991) (fraud action), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992); Enright v. Lubow, 202 N.J.Super. 58, 85, 493 A.2d 1288 (App.Div.1985) (action on title policy); Dorofee v. Pennsauken Township Planning Bd., 187 N.J.Super. 141, 144, 453 A.2d 1341 (App.Div. 1982); Hagen v. Gallerano, 66 N.J.Super. 319, 332-33, 169 A.2d 186 (App.Div.1961) (same); Lovett v. Estate of Lovett, 250 N.J.Super. 79, 94, 593 A.2d 382 (Ch.Div. 1991) (legal malpractice); McMinn v. Damurjian, 105 N.J.Super. 132,142, 251 A.2d 310 (Ch.Div.1969) (same). Breach of fiduciary duty is a tort theory, such that attorneys' fees incurred as a result of that breach may be recoverable as a portion of the plaintiff's damages. Wolfson v. Bonello, 270 N.J.Super. 274, 291 n. 12, 637 A.2d 173 (App.Div.1994) (describing breach of fiduciary duty as a tort); Paris of Wayne, Inc. v. Richard A. Hajjar Agency, 174 N.J.Super. 310, 318, 416 A.2d 436 (App. Div.1980) (same); Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J.Super. 282, 287, 400 A.2d 836 (App.Div.1979) (same); Rodriguez v. Cardona Travel Bureau, 216 N.J.Super. 226, 230, 523 A.2d 281 (Law Div.1986); Restatement (Second) of Torts § 874 ("One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.").
In this case, Lopez's tortious breach of fiduciary duty caused the estate to file suit against the surety on the bond. As a direct and proximate result of Lopez's breach of duty, the estate incurred attorneys' fees to litigate its claim against Fireman's Fund, a third party, in order to demonstrate that Fireman's Fund was financially responsible for Lopez's defalcation. Those fees were a foreseeable consequence of Lopez's actions because all parties were aware of the bond, the express purpose of which was to provide the estate redress from Fireman's Fund for *770 Lopez's improper conduct. Just as a defendant who fraudulently conveys property to avoid a judgment causes the plaintiff to have to file suit against the transferees, Jugan v. Friedman, 275 N.J.Super. 556, 646 A.2d 1112 (App.Div.), cert. denied, 138 N.J. 271, 649 A.2d 1291 (1994), Lopez's defalcation caused the estate to file suit against Fireman's Fund. Lopez is responsible for the estate's counsel fees incurred in the litigation against Fireman's Fund.

B
The next question is whether Fireman's Fund can be held liable as surety for those fees. "Administrators' bonds are given to secure the creditors and next of kin of the deceased from loss through the default or fraud of the administrator, and amount to indemnity to the estate. Indemnity is that which is given to a person to prevent his suffering damage." Ordinary v. Connolly, 75 N.J. Eq. 521, 524, 72 A. 363 (1909) (awarding attorneys' fees incurred by estate in proceeding to establish surety's liability on bond from the bond itself); accord 34 C.J.S. Executors and Administrators § 900 (1998). On breach of an administration bond, "[t]he surety is required to bear any injurious consequences arising from loss to the estate." 31 Am.Jur.2d Executors and Administrators § 350 (1989) (footnotes omitted) (emphasis added). "[T]he principal and sureties are equally and primarily liable in case of a breach of [the bond's] conditions and the liability of the sureties is, within the terms of the contract and controlling statutes, coextensive with that of the principal." 34 C.J.S. Executors and Administrators § 900 (1998) (footnotes omitted) (emphasis added); accord 31 Am. Jur.2d Executors and Administrators § 349 (1989) ("[T]he liability of a surety on a personal representative's bond is coextensive with that of the representative for losses occasioned by official acts and defaults.") (emphasis added). Thus, the liability of a surety is coextensive with the liability of the administrator. Those precepts also suggest that the estate should be made whole for any harm or "injurious consequences" caused by a defalcating administrator.
As discussed, Lopez caused the estate to expend attorneys' fees in the proceeding on the bond. Fireman's Fund, under principles of suretyship, is liable for the full extent of the damages caused by Lopez. Therefore, Fireman's Fund should be liable for those damages caused by Lopez, including the attorneys' fees incurred in the proceeding on the bond.
The thoughtful dissent concludes that although Lopez proximately caused the estate to incur fees in the bond litigation and is responsible for those fees as damages, Fireman's Fund should not have to pay those damages because the surety bond does not explicitly state that Fireman's Fund must do so. We recognize that the surety's liability is limited by the terms of the surety bond. Supra at 39-40, 776 A.2d 777 ("[T]he principal and sureties are equally and primarily liable in case of a breach of [the bond's] conditions and the liability of the sureties is, within the terms of the contract and controlling statutes, coextensive with that of the principal.") (quoting 34 C.J.S. Executors and Administrators § 900 (1998) (footnotes omitted) (emphasis added)). However, unless there is a bond provision to the contrary, the surety's liability is coextensive with the principal's liability. 31 Am.Jur.2d Executors and Administrators § 349 (1989) ("Absent a statute or bond provision to the contrary, the liability of a surety on a personal representative's bond is coextensive with that of the representative for losses occasioned by official acts and defaults.") (emphasis added) (footnotes omitted). *771 In this case, the surety bond is silent on whether damages consisting of attorneys' fees incurred as a result of the principal's wrongful conduct are recoverable against the surety. Thus, there is no bond language precluding an award of such damages, and the surety's and principal's liabilities are coextensive. Moreover, the surety bond here merely states that the surety and principal bind themselves in the amount of $800,000 and that the principal will perform several enumerated conditions. The language of the bond makes no mention of the scope of the surety's liability. If we were to accept the dissent's premise and take it to its logical conclusion, the estate would not be able to recover any damages for Lopez's defalcation because the surety bond does not explicitly say that the surety is liable for those damages.
As there is no contractual basis to prohibit damages that consist of attorneys' fees, we are left with the fundamental precept of suretyship law that the surety's liability is coextensive with the liability of the principal. Further, the overriding purpose of the surety bond is to make the estate whole for a fiduciary's misconduct. Based on those guiding principles, we conclude that the surety is liable for fees proximately caused by the principal's misconduct. The dissent's reliance on cases involving performance, payment, and labor and materials bonds does not persuade us otherwise in the context of this case, which involves fraudulent conduct of a fiduciary and a bond silent on the scope of the surety's liability.

C
New Jersey generally follows the American Rule, which prohibits a litigant from recovering counsel fees from a defendant when the fees were incurred in an action to establish that defendant's liability. Jugan, supra, 275 N.J.Super. at 573, 646 A.2d 1112. The surety suggests that the award of fees sought by the estate conflicts with both the American Rule and with Rule 4:42-9, which sets forth the limited circumstances in which counsel fees may be awarded. We therefore must address that claim of conflict, and determine whether that rule limits the obligation of the surety to protect the estate from theft by the administrator.
The American Rule generally precludes a party from recovering counsel fees from his or her adversary in that litigation. North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569, 730 A.2d 843 (1999); Rendine v. Pantzer, 141 N.J. 292, 322, 661 A.2d 1202 (1995); Right to Choose v. Byrne, 91 N.J. 287, 316, 450 A.2d 925 (1982); Gerhardt v. Cont'l Ins. Cos., supra, 48 N.J. at 301, 225 A.2d 328; Janovsky v. American Motorists Ins. Co., 11 N.J. 1, 7, 93 A.2d 1 (1952); see R. 4:42-9(a) (prohibiting, with exceptions, counsel fee awards); Oliviero v. Porter Hayden Co., 241 N.J.Super. 381, 386, 575 A.2d 50 (App.Div.1990); Restatement (Second) of Torts § 914(1). "[W]e accept, as do most other courts, the premise of the American Rule that ordinarily society is best served when the parties to litigation each bear their own legal expenses." Coleman v. Fiore Bros., Inc., 113 N.J. 594, 596, 552 A.2d 141 (1989) (citations omitted); accord Community Realty Management, Inc. v. Harris, 155 N.J. 212, 235, 714 A.2d 282 (1998). However, the American Rule "does not preclude an allowance of reasonable counsel fees where the incurring thereof is a traditional element of damages in a particular cause of action." Pressler, supra, comment 2.10 on R. 4:42-9. "A plaintiff has the right to recover attorney's fees incurred in other litigation with a third person, if he became involved in that litigation as a result of a breach of contract *772 or tortious act by the present defendant." 22 Am.Jur.2d Damages § 618 (1988); accord Restatement (Second) of Torts § 914(2).
An Appellate Division decision, Jugan v. Friedman, supra, 275 N.J.Super. 556, 646 A.2d 1112, illustrates the distinct treatment afforded counsel fee awards as damages and other fee awards. In Jugan, the plaintiff successfully sued the defendant for egregious malpractice. Id. at 559, 646 A.2d 1112. He recovered a judgment, including both compensatory and punitive damages, and sought to satisfy the judgment out of the defendant's assets. Id. at 559-60, 646 A.2d 1112. However, the defendant had divested himself of all assets other than those that could not be used to satisfy the judgment. Id. at 560-61, 646 A.2d 1112. The plaintiff filed suit against the defendant, his wife, and his three adult sons, alleging that the defendant had fraudulently conveyed the assets to those family members to avoid satisfying the plaintiff's judgment. Ibid. The plaintiff requested attorneys' fees. Id. at 563, 646 A.2d 1112.
The Appellate Division first noted the general rule that parties bear the burden of their own counsel fees. Id. at 573, 646 A.2d 1112. The court then noted, however, "that if the commission of a tort proximately causes litigation with parties other than the tortfeasor, the plaintiff is entitled to recover damages measured by the expense of that litigation with third parties." Ibid. Applying that rule, the court concluded that
although Mr. Jugan may not recover his litigation expenses for litigating with Dr. Friedman to establish that his transfers were fraudulent, he is entitled to reimbursement for reasonable attorneys' fees expended in litigating with third parties, including the other defendants, to void or set aside the transfers.
[Ibid.]
Accordingly, the plaintiff was not entitled to attorneys' fees for the costs incurred in litigating directly against the defendant, but he was entitled to attorneys' fees for the costs incurred in litigating the validity of the transfers against the defendant's wife and sons. See also Gerhardt, supra, 48 N.J. at 300-01, 225 A.2d 328 (allowing recovery of fees incurred in defending prior worker's compensation action, but disallowing fees incurred in subsequent action on insurance policy seeking coverage for worker's compensation claim).
As discussed, the estate in this case is entitled to recover, from Lopez, the damages caused by his breach of fiduciary duty. Those damages include the fees incurred in the proceeding on the bond. In view of the fact that all parties knew about and expressly intended the estate to proceed on the bond to recover any damages caused by Lopez, the attorneys' fees were a foreseeable consequence of the defalcation. That conclusion does not run afoul of the American Rule, which does not prohibit awards of attorneys' fees incurred in litigation with a third party. Because Fireman's Fund assumed coextensive liability with Lopez, Fireman's Fund is also liable for those fees. Those fees do not implicate the American Rule because they were incurred in the litigation on the bond, rather than the litigation against Lopez.
One New Jersey court has addressed whether the estate or the surety should bear the burden of the attorney's fees incurred in the proceeding to recover on the bond. In Ordinary v. Connolly, supra, 75 N.J. Eq. at 527, 72 A. 363, the estate, after successfully recovering the damages caused by an administrator, requested that the surety bear liability for the attorneys' fees incurred in the proceeding on the bond. The court concluded:

*773 There is no reason that counsel securing the removal of the administrator and prosecuting the administration bonds should not be paid reasonable and proper fees for their services, and, on the contrary, there is every reason why they should be compensated. The estate should not be made to bear the burden of these charges, but they should be imposed upon the administrator and his surety who became bound that the estate should be well and truly administered according to law for the benefit both of creditors and the next of kin of the deceased.
[Ibid.]
We agree with Connolly's rationale. The holding in Connolly further supports our conclusion that this appeal falls within the principle that the American Rule "does not preclude an allowance of reasonable counsel fees where the incurring thereof is a traditional element of damages in a particular cause of action." Pressler, supra, comment 2.10 on R. 4:42-9.
In Saffer v. Willoughby, 143 N.J. 256, 670 A.2d 527 (1996), we held that an attorney may be liable for attorneys' fees incurred by the aggrieved client in the action to establish the attorney's liability as consequential damages arising from the attorney's professional malpractice. We have since reaffirmed that rule and clarified that it also applies when an attorney intentionally breaches a fiduciary duty to a client arising out of the attorney-client relationship. Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 436, 771 A.2d 1194 (2001). Those decisions recognize that such fees are consequential damages of the attorney's wrongful conduct, just as the fees incurred in the bond litigation are consequential damages of Lopez's embezzlement and waste of the estate's assets. Our decision in this appeal is not, however, an application of Saffer and Packard-Bamberger. Those cases authorize an award of attorneys' fees against an attorney-defendant when those fees were incurred as a result of the litigation to establish the attorney-defendant's liability. Such an award is directly contrary to the American Rule's prohibition, but was authorized in those cases due to the significance of the attorney-client relationship. Our decision here, however, is distinct from Saffer. An award, against Lopez, of the fees the estate incurred to establish Lopez's liability in the Florida litigation would be analogous to the situation in Saffer and Packard-Bamberger. In those circumstances, the estate may not have been entitled to an award of fees based simply on the fact that Lopez owed the estate a fiduciary duty. Packard-Bamberger makes clear that the fact that a person owes another a fiduciary duty, in and of itself, does not justify an award of fees unless the wrongful conduct arose out of an attorney-client relationship. Our holding in this appeal, however, involves an award, to the estate, of attorneys' fees incurred in litigation on the bond that were consequential damages of Lopez's misconduct. That award is distinct from Saffer because the fees are damages incurred in litigation other than to establish Lopez's liability. Thus, our decision here is not an application, much less an expansion, of Saffer and Packard-Bamberger.

III
We agree with the Appellate Division that the award of interest in this case should be calculated on a simple basis and assessed from the date of the actual defalcations. "[T]he allowance of interest on surcharges, and the rate thereof, are discretionary matters." Ditmars v. Camden Trust Co., 10 N.J. 471, 491-92, 92 A.2d 12 (1952); see Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478, 541 A.2d *774 1063 (1988) ("Ordinarily, the trial court has the discretion to grant or deny prejudgment interest."). "An appellate court will not interfere unless the interest charged is palpably unfair." State ex. rel. Matthews v. National Sur. Corp., 17 N.J.Super. 137, 142, 85 A.2d 534 (App.Div.), certif. denied, 9 N.J. 287, 88 A.2d 39 (1952).
The Chancery Division rejected the estate's request for "investment market rate" interest in favor of an award of simple interest. The court referred by analogy to Rule 4:42-11, which authorizes an award of prejudgment simple interest in tort actions, but did not apply the rule strictly. On this record, we see no abuse of discretion in the court's award of simple interest.
We also agree with the Appellate Division's conclusion that the date of defalcation should serve as the commencement date from which the interest should be assessed.
In this case, we conclude simple interest should be calculated from the date the improper use of the funds was made. Under these circumstances, we view lost interest as an element of the estate's damages claim and therefore calculated on the amounts surcharged under the bond. See Melosh v. Melosh, 125 N.J. Eq. 486, 496, 6 A.2d 472 (Ch.1939); In re Jula, 3 N.J. Misc. 976, 979, 130 A. 733 (Orph. 1925); Mount v. VanNess, 35 N.J. Eq. 113, 114 (Prerog.1882); 7 New Jersey Practice, Wills and Administration § 1015 n. 2 at 114 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed.1984). We are persuaded this approach is more equitable in that lost interest is an integral part of the estate's damage claim as a result of the defalcation, and comports with the fiduciary responsibility of an administrator to act prudently with respect to the assets of an estate. N.J.S.A. 3B:10-26; In re Beales' Estate, 13 N.J.Super. 222, 228-29, 80 A.2d 311 (App.Div.), certif. denied, 7 N.J. 581, 83 A.2d 381 (1951).
[Lash, supra, 329 N.J.Super. at 263-64, 747 A.2d 327.]
For those reasons, we affirm the Appellate Division's conclusions with regard to the award of interest.

IV
In summary, we conclude that the attorneys' fees incurred by the estate in the action on the surety bond should be assessed against the bond. The surety assumed liability for all damages caused by Lopez, and those fees were a direct and proximate result of his tortious conduct. The American Rule does not preclude an award of the fees because they were incurred in the bond litigation, rather than the litigation to establish Lopez's liability. On the issue of interest, we affirm the determination that the estate is entitled to simple interest running from the date of the defalcations. Therefore, we affirm in part, reverse in part, and remand for entry of an order requiring the surety to pay the attorneys' fees incurred in the bond litigation.
VERNIERO, LaVECCHIA, JJ., dissenting.
This matter involves the misappropriation or misapplication of assets by an estate's administrator. The narrow issue is whether the counsel fees incurred by the estate in seeking recovery of those assets are surchargeable against the administration bond. We would affirm the judgment of the Appellate Division substantially for the reasons expressed in Judge Fall's persuasive opinion. In re Estate of Lash, 329 N.J.Super. 249, 747 A.2d 327 (App.Div. 2000). The panel correctly concluded that there is "no authority in this State to surcharge counsel fees against the administration *775 bond." Id. at 252, 747 A.2d 327. We write to emphasize the following.

I.
Our Court Rule governing the allowance of attorneys' fees, Rule 4:42-9, adopts the philosophy that "sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated in" the Rule. Gerhardt v. Cont'l Ins. Cos., 48 N.J. 291, 301, 225 A.2d 328 (1966). One of the specific exceptions recognized in the Rule is that fees are permitted "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." R. 4:42-9(a)(6). A surety policy is materially different from an indemnity policy and does not fall within that exception. See Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 364-65, 678 A.2d 699 (1996) (explaining difference between surety and indemnity policy and concluding that Court Rule has been strictly construed to limit application only to true liability and indemnity insurance policies); Fengya v. Fengya, 156 N.J.Super. 340, 347, 383 A.2d 1170 (App.Div.1978) (finding that Rule is not applicable to action brought against surety company to enforce its obligation on guardian's bond); see also Leatherby Ins. Co. v. City of Tustin, 76 Cal.App.3d 678, 143 Cal.Rptr. 153, 158 (1977) (quoting Somers v. United States Fid. & Guar. Co., 191 Cal. 542, 217 P. 746, 749 (1923)) (stating that "`[t]he essential distinction between an indemnity contract and a contract of guaranty or suretyship is that the promisor in any indemnity contract undertakes to protect his promisee against loss or damage through a liability on the part of the latter to a third person,'" whereas "`the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligations to the promisee' ") (internal citations omitted).
Nowhere does the Rule provide that fees may be enforced against a surety. A comment to the Rule, however, provides that the Rule "does not preclude an allowance of reasonable counsel fees where the incurring thereof is a traditional element of damages in a particular cause of action." Pressler, Current N.J. Court Rules, comment 2 on R. 4:42-9 (2001). The sole reported case in New Jersey on that subject in the context of a defalcating administrator of an estate is Ordinary v. Connolly, 75 N.J. Eq. 521, 72 A. 363 (Prerog.Ct.1909). In that case, the court held that counsel fees are an element of damages: "It seems to me clear, ... that a reasonable counsel fee, necessarily incurred in the removal of an administrator, is recoverable as part of the damages resulting from his dereliction and sustained by occasion of the breach of the condition that he would well and truly administer the estate...." Id. at 526, 72 A. 363. The court held that the estate should not be made to bear the burden of those charges. Id. at 527, 72 A. 363.
The Appellate Division below was not persuaded by the decision in Ordinary because the case predated Rule 4:42-9, "which was `adopted in response to widespread abuses by courts and attorneys with respect to allowances of counsel fees in Chancery prior to 1948.'" In re Estate of Lash, supra, 329 N.J.Super. at 258, 747 A.2d 327 (quoting Fengya, supra, 156 N.J.Super. at 344, 383 A.2d 1170); see N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569, 730 A.2d 843 (1999) ("New Jersey has a strong policy disfavoring shifting of attorneys' fees."); Pressler, supra, comment 1 on R. 4:42-9 (stating that in rejecting changes to Rule in 1971 and 1975, Court was concerned that expansion of court's power to allow *776 counsel fees might well result in impositions upon judicial administration and upon litigants that would outweigh any advantages that might be anticipated).
Since the decision in Ordinary, this Court on several occasions has relied on the principle of surety law that "`a surety is chargeable only according to the strict terms of its undertaking and its obligation cannot and should not be extended either by implication or by construction beyond the confines of its contract.'" Eagle Fire Prot. Corp., supra, 145 N.J. at 354, 678 A.2d 699 (quoting Monmouth Lumber Co. v. Indem. Ins. Co. of N. Am., 21 N.J. 439, 452, 122 A.2d 604 (1956)). Indeed, in Eagle Fire Protection Corp., this Court disallowed an award of attorneys' fees against an argument that Rule 4:42-9(a) authorized such an award, noting that twice before the Supreme Court had rebuffed recommendations from the Civil Practice Committee to amend Rule 4:42-9(a) to allow awards of counsel fees in a broader range of suits brought by insureds against insurers. Id. at 364, 678 A.2d 699. The Court reaffirmed that a surety contract is not the equivalent of an indemnity policy or liability policy and therefore does not fall within the reach of the Court Rule:
The insurance contract in this case did not constitute a commitment by First Indemnity to pay Eagle Fire's liability to a third party or to indemnify Eagle Fire for such liability. Rather, the bond simply required First Indemnity to pay Eagle Fire for its work if Olsen did not do so. Because this is not a case where the insurer agreed to protect the insured from third-party claims, R. 4:41-9(a)(6) is inapposite. Accordingly, we hold that given the narrow scope of R. 4:42-9(a)(6), Eagle Fire is not entitled to legal fees.
[Id. at 365, 678 A.2d 699.]
Nevertheless, the majority finds support for its conclusion that the surety may be surcharged for counsel fees over and above the amount of the bond from the decision in Jugan v. Friedman, 275 N.J.Super. 556, 646 A.2d 1112 (App.Div.), certif. denied, 138 N.J. 271, 649 A.2d 1291 (1994). In Jugan, the defendant fraudulently transferred his assets to other members of his family to avoid paying the plaintiff's judgment. Id. at 560-61, 646 A.2d 1112. In a subsequent action, the court permitted the plaintiff to recover the litigation costs associated with suing the defendant's family members to recover the assets. Id. at 560, 646 A.2d 1112. The court referred to the general rule in New Jersey that each party must bear his or her own litigation expenses, including attorneys' fees. Id. at 573, 646 A.2d 1112. The court then observed that there is an exception to the rule when the commission of a tort proximately causes litigation with parties other than the tortfeasor. Ibid. In those circumstances, the plaintiff was entitled to recover damages measured by the expense of that litigation with the third parties. Ibid. (citing Feldmesser v. Lemberger, 101 N.J.L. 184, 186-88, 127 A. 815 (E. & A.1925)).
The Appellate Division correctly distinguished Jugan from this case. The majority contends that the estate should be permitted to recover the amount of money it expended in litigating with the surety, now characterized as a third-party, to collect on its $800,000 Florida judgment. The Court reasons that Lopez's defalcation as administrator of the estate is the proximate cause of the litigation that ensued between the estate and the surety and therefore the surety should be liable for the fees the estate spent in correcting the administrator's misdeeds. That reasoning is circular and avoids the essential question that still remains: whether the surety is responsible in tort for attorneys' fees as part of its *777 contractual liability for the administrator's defalcation to the estate. We believe that the answer to that question must be no.
In Jugan, the liability was born solely of tort principles. Here we are addressing liability founded only in contract. The contract defines the exposure. That exposure cannot be altered by attempting to identify the surety as a "third party." The surety is not a third party. It is a direct participant in this matter as a result of its direct contractual relationship to the estate.
The Court finds the surety liable for the fees because "the liability of a surety on a personal representative's bond is coextensive with that of the representative for losses occasioned by official acts and defaults." Ante at 28, 776 A.2d at 770 (citing 31 Am.Jur.2d Executors and Administrators § 349 (1989)). But, that characterization is too broad and, therefore, does not appropriately describe the surety's liability in this setting. More completely, American Jurisprudence states that "the surety has a right to stand strictly upon the contract, which neither the courts nor the parties can vary." 31 Am.Jur.2d Executors and. Administrators § 349 (1989); see also 34 C.J.S. Executors and Administrators § 900 (1998) ("[T]he principal and sureties are equally and primarily liable in case of a breach of its conditions.... The obligation of the sureties, however, rests solely in contract and they cannot be held liable contrary to or beyond the condition of the bond.") (emphasis added). As for attorneys' fees, that section of Corpus Juris Secundum refers only to Lawyers Surety Corp. v. Larson, 869 S.W.2d 649, 653 (Tex.App.1994), in which the court allowed attorneys' fees to be assessed against the surety after finding that the applicable Texas statute permitted recovery of fees against the surety resulting from the administrator's failure to meet statutory obligations.
In New Jersey, however, the statute governing sureties and the actual surety agreement involved here do not include provisions requiring the surety to be responsible for counsel fees when sued on its own bond. N.J.S.A. 3B:15-5 provides for the conditions of the bond on intestate administration, and N.J.S.A. 3B:15-26 concerns proceedings to satisfy judgment on the bond. Neither section provides that the surety is responsible for attorneys' fees. The majority's view of the surety's exposure to damages in the form of attorneys' fees, premised on a theory of tort liability, simply is wide of the mark. As this Court said a few short years ago, the surety is chargeable only according to the strict terms of its undertaking, and its contractual obligations "cannot and should not be extended by implication or by construction." Eagle Fire Prot. Corp., supra, 145 N.J. at 354, 678 A.2d 699 (quoting Monmouth Lumber Co., supra, 21 N.J. at 452, 122 A.2d at 611); see also Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 571, 722 A.2d 515 (1999) (same).
Other courts have addressed whether attorneys' fees are recoverable against the surety as an element of damages. In Faulkner Concrete Pipe Co. v. United States Fidelity & Guaranty Co., 218 So. 2d 1, 2 (Miss.1968), the City of Laurel contracted with the American Construction Company to add additional lines to the city's sewer system. As part of the contract, the construction company entered into a surety agreement with Fidelity & Guaranty whereby the contractor would promptly make all payments to those supplying labor or materials for the project. Ibid. Nowhere in the surety agreement was there a provision for the payment of attorneys' fees. Ibid. In the contract between the city and the construction company, *778 however, there was a provision that stated that the construction company would be liable for "all attorneys' fees and costs of collection." Ibid. A subcontractor sued the construction company for its alleged failure to pay for the subcontractor's services and included a claim for attorneys' fees. Ibid. The question arose whether the surety could be responsible for the fees. Id. at 3. In rejecting that claim, the court stated: "We have no statute making the surety on a contractor's bond liable for attorney's fees incurred by the obligee in case of default by the principal and suit on the bond, and neither the contract nor the bond in the case at bar contained any such provision." Ibid. (quoting Nat'l Sur. Co. v. Trs. of Runnelstown Consol. Sch., 146 Miss. 277, 111 So. 445, 448 (1927)).
Another example is New Amsterdam Casualty Co. v. Texas Industries, Inc., 414 S.W.2d 914 (Tex.1967). In that case, the respondent was not paid for materials furnished to a contractor. He sued the contractor and the surety and, in addition to damages, claimed $19,773.62 in attorneys' fees against the surety. Ibid. The court held that attorneys' fees are not recoverable against the surety on the payment bond, nor are attorneys' fees recoverable in an action for tort or contract unless provided by statute or contract between the parties. Id. at 915. See L.S. Tellier, Annotation, Surety's Liability for Obligee's Attorney Fees Under Provisions of Performance Bond of Public Contractor or Subcontractor, 69 A.L.R.2d 1046 (1960) (summarizing cases in which surety was held not liable for attorneys' fees in absence of provision expressly creating that liability in surety bond or under statutory law).
We would conclude that the surety is not liable beyond its obligation under statute and the express terms of the bond. There is no provision in the bond or in any statute in New Jersey that provides that the surety may be surcharged for counsel fees. Neither tort principles nor general invocations of equitable principles ought to be imported here to recast the obligation that the surety has undertaken. Its contractual obligation is to restore the monies to the estate that were taken by the administrator.
Although the estate sued the surety to compel payment on the bond, the attorneys' fees incurred in that suit are not part of the surety's liability. Attorneys' fees expended in litigation with the surety do not fit within that contractual obligation. Nor do our statutes governing bonds given in intestate administration require such coverage. The surety is entitled to stand on the limits of the obligations it bargained for in its contract.
As a practical matter, insurers writing surety bonds in New Jersey now will have reason to regard their exposure on their bonds as greater than that for which they bargained. We can expect that they will price their bonds to reflect that new undefined exposure. The impact will be borne by none other than our citizens when they are required to obtain a surety bond, pursuant to N.J.S.A. 3B:15-1 to -6, as part of the administration of estates in this State.

II.
Our conclusion is consistent with the American Rule. That rule requires each side to bear the cost of litigation and is a well-established feature of our jurisprudence. N. Bergen Rex Transp., Inc., supra, 158 N.J. at 569, 730 A.2d 843. The Court attempts to reconcile its disposition with the American Rule by denominating the fees incurred by the estate as an element of damages that are thus not implicated by the rule. The majority also would award fees on equitable grounds. In our view, the Court's approach conflicts with the American Rule, or at the least, conflicts with the policies undergirding the rule.
*779 The American Rule is the antithesis of the English Rule. As the name implies, that latter rule traces its roots to England, whose courts have been authorized to award counsel fees to successful plaintiffs since as early as 1278. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475, 478 (1967). "It is now customary in England, after litigation of substantive claims has terminated, to conduct separate hearings before special `taxing Masters' in order to determine the appropriateness and the size of an award of counsel fees." Ibid. In contrast, the American Rule "has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." Id. at 717, 87 S.Ct.at 1407, 18 L.Ed.2d at 478.
The purposes behind each rule are straightforward. Succinctly stated, "[w]hile the English Rule focuse[s] on providing full compensation to the winner, the American Rule emphasize[s] equal access to justice." Mihalik v. Pro Arts, Inc., 851 F.2d 790, 793 (6th Cir.1988). One commentator has elaborated:
The American Rule has been perpetuated because it represents a democratic ideal. Unfettered access to the courts for all citizens with genuine legal disputes has become a cornerstone of the American concept of justice. All persons are entitled to their day in court, however poor they may be and however rich their opponents. The courts fear that injured parties, particularly those of modest means, would be discouraged from invoking the judicial system if the cost of losing an action included payment of one's opponent's legal bills....
The American Rule also reflects an equitable principle that penalizing a party for merely defending or prosecuting a lawsuit is unfair. The Supreme Court [of the United States] has recognized that the results of litigation are frequently uncertain and that making an inaccurate prediction of how a court will resolve a case does not warrant a penalty. Finally, the American Rule provides a convenient administrative scheme. By not shifting fees, courts are not burdened with the somewhat arbitrary calculation of the `reasonable costs' incurred by a prevailing party.
[Neal H. Klausner, Note, The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility, 61 N.Y.U. L.Rev. 300, 304-05 (1986) (footnotes omitted).]
This Court has described the policies undergirding the American Rule as "strong." N. Bergen Rex Transp., Inc., supra, 158 N.J. at 569, 730 A.2d 843. Our courts have been justifiably circumspect in departing from the rule, doing so only when there is "express authorization by statute, court rule, or contract," Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 504, 468 A.2d 150 (1983), or when the interests of equity demand it, Red Devil Tools v. Tip Top Brush Co., 50 N.J. 563, 575-76, 236 A.2d 861 (1967).
In addition, we have permitted the award of counsel fees to successful litigants in cases involving attorney negligence and attorney misconduct. Saffer v. Willoughby, 143 N.J. 256, 272, 670 A.2d 527 (1996) (permitting counsel-fee award as element of consequential damages suffered by former client in attorney-malpractice setting); Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 771 A.2d 1194 (2001) (extending holding of Saffer to attorney misconduct cases). In those instances, however, the Court has emphasized that to recover such fees, a prevailing plaintiff must demonstrate that the underlying action arose within the context of an attorney-client relationship. Packard-Bamberger & Co., supra, 167 N.J. at 443, 771 A.2d 1194.
*780 In the fee-shifting setting, we have also declared that the authority to regulate and discipline attorneys "is the exclusive province of this Court." McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 554, 626 A.2d 425 (1993) (interpreting statute authorizing counsel fees against non-prevailing party within context of frivolous lawsuits to apply to clients, not attorneys). Our unique role in regulating the bar and our specific concern for public trust in the bar provide sound bases on which to permit an award of fees in actions by clients against their former attorneys. We find no similar ground on which to extend the holdings of Saffer and Packard-Bamberger in the absence of an attorney-client relationship.
In sum, none of the specific exceptions to the American Rule applies in this case. No statute or rule of court authorizes a grant of attorneys' fees, nor does the surety bond contemplate such an award by express language. Additionally, as noted, equity does not support an award of fees in this circumstance. Lastly, because the estate's action did not arise out of an attorney-client relationship, the holdings of Saffer and Packard-Bamberger are inapplicable.

III.
For the reasons stated, we would affirm the judgment of the Appellate Division. Accordingly, we dissent.
For affirmance in part, reversal in part and remandmentChief Justice PORITZ and Justices STEIN, COLEMAN, LONG, and ZAZZALI5.
For affirmanceJustices VERNIERO and LaVECCHIA2.