875 A.2d 925

IN THE MATTER OF THE ESTATE OF ELIZABETH HULL VAYDA, DECEASED.

Argued February 14, 2005—Decided June 29, 2005.

*Robert A. Knee,* argued the cause for appellant, Katherine V. Rainey (*The Knee Law Firm,* attorneys).

*Leonard Adler*, argued the cause for respondent, Peter E. Vayda.

JUSTICE RIVERA–SOTO delivered the opinion of the Court.

This will contest between estranged siblings requires that we address yet again whether, in the absence of a mandate based on a statute, court rule or contract, attorneys' fees can be shifted from one party to another. Upon the application of the successful sibling, the trial court shifted that sibling's attorneys' fees to her brother, the executor and a co-beneficiary of the estate. The Appellate Division agreed that, under the circumstances, the successful sibling should be reimbursed for her attorneys' fees, but that the reimbursement should come from the decedent's estate and not from her brother and co-beneficiary.

We hold that the circumstances here do not present sufficient cause to depart from New Jersey's deep-rooted adherence to the "American Rule," a rule that requires that each party bear their own attorneys' fees. We further hold that, in this case, the successful sibling's attorneys' fees nonetheless should be reimbursed by the estate.

## I.

The relevant facts are stated briefly. Decedent Elizabeth Hull Vayda died testate on January 12, 2000, survived by her son and daughter, Peter Vayda (Peter) and Katherine Rainey (Katherine). Her most recent will [1] provided for the following specific bequests: Peter was to receive ten percent of decedent's residuary estate "as a thank you for all the support and care he has given me over the

---

[1] There were several wills that preceded decedent's last will, dated January 13, 1998. That latter will itself was the subject of some controversy. Originally, it was dated incorrectly as executed on January 13, 1997. The date of the will was corrected to January 13, 1998 via a codicil dated July 8, 1998. Additional controversy concerning the manner in which the January 13, 1998 will was executed, including claims of undue influence, were addressed by the trial court but are not before us.

course of the years;" Peter also was to receive a specific bequest of $20,000; Katherine would be forgiven a $20,000 loan; and Peter's paramour of many years was to receive a specific bequest of $25,000 apparently in appreciation for having assisted in providing care for decedent in her later years. Decedent's residuary estate was to be divided between Peter and Katherine in equal shares per stirpes. Because the will provided for a specific bequest to Peter of 10% of the residuary estate with the remainder of the residuary estate to be divided equally between Peter and Katherine, Peter was entitled to 55% of the residuary estate, while Katherine was entitled to 45%. Finally, and most significant, contrary to all of decedent's prior wills, each of which named Katherine as executor, Peter was appointed executor of decedent's estate to serve without "any bond, surety or other security in any jurisdiction."

Decedent's will was admitted to probate and letters testamentary were issued to Peter on January 24, 2000, twelve days after decedent's death. Notwithstanding the diligence with which decedent's will was submitted to the Surrogate, it is undisputed that for more than a year following decedent's death, Peter did little to administer the estate or carry out his duties as executor, which stands in marked contrast to his uncontested portrayal as a dutiful and attentive son. The list of Peter's shortcomings as an executor need not be repeated here; it is sufficient to note that, as ultimately described by the trial court, "Peter was not administering the estate at all." The Appellate Division echoed the trial court's appraisal of Peter's discharge of his executor's duties as follows: "Peter's administration of decedent's estate proceeded with a marked lack of diligence."

Katherine sued, seeking both to void the will as the product of undue influence and, alternatively, to remove Peter as executor of decedent's estate and to obtain an accounting. In response, Peter submitted an estate "summary" that, based on Peter's uncorroborated claim that decedent wanted to pay for Peter's daughter's college education and ballet lessons, purported to include distribu-

tions to him totaling more than $104,000, together with reimbursement for a series of expenses Peter claimed to have incurred on decedent's behalf. Katherine amended her complaint to include a challenge to those proposed distributions and reimbursements. Peter's post-will contest claims against the estate constituted the entirety of Katherine's bad faith claim against him.

The will contest was heard before the Chancery Division. In a carefully considered written opinion, the trial court held that the January 13, 1998 will was not the product of undue influence. The trial court, however, confirmed its earlier *pendente lite* determination to remove Peter as executor of the estate and disallowed many of Peter's claims against the estate. More importantly, the trial court determined that "all of Peter's activities, taken as a whole, amount to breach of fiduciary duties to the beneficiaries of the estate of which he assumed executorship." The trial court further found that Peter's post-will contest actions "manifested obvious and blatant bad faith to his sister." The trial court thus concluded that

> [f]or these acts, it is appropriate that [Peter] be required to pay [Katherine's] legal fees, not to be paid from the estate, which would result in her paying 45% of her own fees, but rather from his share of the estate. But for his deceptive actions and devious treatment of her, she would not have had to bring this action. He will pay his own legal fees. . . . . Fee shifting is appropriate in probate actions, as there is considered to be a fund in court. *See Packard–Bamberger & Co. [ ] v. Collier [ ]*, 167 *N.J.* 427, 771 *A.*2d 1194 (2001).

Peter appealed and Katherine cross-appealed, raising eight and four separate issues, respectively. The Appellate Division, in an unpublished decision, affirmed the trial court in all but three respects, only one of which is relevant before us. The panel reversed the trial court's judgment that "[Peter] shall pay [Katherine] the costs she incurred in pursuing this action the amount of said costs to be . . . paid to [Katherine] from [Peter's] share of the estate," and remanded that issue to the trial court for consideration of whether, under *R.* 4:42–9(a)(3), the estate should pay Katherine's attorneys' fees.

Once again, Peter petitioned this Court for certification and Katherine filed a cross-petition for certification. We denied Pe-

ter's petition for certification, but granted Katherine's cross-petition for certification limited solely to one discrete question: whether the trial court properly concluded that an executor who breached his duty to beneficiaries of the estate should be obligated for the payment of counsel fees incurred by the prevailing party. 182 *N.J.* 139, 861 *A.*2d 844 (2004).

## II.

Our analysis of whether a derelict executor should bear the burden of the successful contesting party's attorney's fees in an action seeking the executor's removal must start from the proposition that "New Jersey has a strong public policy against the shifting of costs" and that "[t]his Court has embraced that policy by adopting the 'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party." *In re Niles,* 176 *N.J.* 282, 293–94, 823 *A.*2d 1 (2003) (citations omitted). As we explained in *In re Niles,* "[t]he purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." *Id.* at 294, 823 *A.*2d 1.

In general, *Rule* 4:42–9 codifies those specific instances where, in the absence of a separately enabling statute or contract, fee shifting is permitted. In the context of probate matters such as the one before us, the *Rule* specifically provides that

[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except ... [i]n a probate action, ... *[i]f* probate is granted, and *it shall appear that the contestant had reasonable cause* for contesting the validity of the will or codicil, *the court may make an allowance* to the proponent and the contestant, *to be paid out of the estate.*

[*R.* 4:42–9(a)(3) (emphasis supplied).]

This limited exception "does not, however, modify [the *Rule's*] approach and philosophy, namely that sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated ...

in the rule. That is the so-called American Rule to which the New Jersey Supreme Court remains committed." Pressler, *Current N.J. Court Rules,* comment 1 on *Rule* 4:42–9 (2005) (citations and internal quotation marks omitted).

In a quartet of cases, we have created carefully limited and closely interrelated exceptions to the American Rule that are not otherwise reflected in the text of *Rule* 4:42–9. In the context of an attorney malpractice action, we allowed the malpractice plaintiff to recover, as consequential damages, the attorneys' fees incurred in prosecuting the malpractice action, reasoning that "[a] client 'may recover for losses which are proximately caused by the attorney's negligence or malpractice.' " *Saffer v. Willoughby,* 143 *N.J.* 256, 271, 670 *A.2d* 527 (1996) (*citing Lieberman v. Employers Ins.,* 84 *N.J.* 325, 341, 419 *A.2d* 417 (1980)). We explained that

a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action. Those are consequential damages that are proximately related to the malpractice. In the typical case, unless the negligent attorney's fee is determined to be part of the damages recoverable by plaintiff, the plaintiff would incur the legal fees and expenses associated with prosecuting the legal malpractice suit.

[*Id.* at 272, 670 *A.2d* 527.]

In *Packard–Bamberger & Co. v. Collier,* 167 *N.J.* 427, 771 *A.2d* 1194 (2001), we extended the limited exception allowing the recovery of attorneys' fees in attorney malpractice actions created in *Saffer v. Willoughby, supra,* to include actions for attorney misconduct, reasoning that

an attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care. A client's claim concerning the defendant-attorney's breach of a fiduciary duty may arise in the legal malpractice context. Nonetheless, if it does not and is instead prosecuted as an independent tort, a claimant is entitled to recover attorneys' fees so long as the claimant proves that the attorney's breach arose from the attorney-client relationship. Accordingly, we hold that a successful claimant in an attorney-misconduct case may recover reasonable counsel fees incurred in prosecuting that action.

[*Packard–Bamberger & Co. v. Collier, supra,* 167 *N.J.* at 443, 771 *A.2d* 1194.]

The fulcrum of the analysis for these limited exceptions to the American Rule was thus shifted from *Saffer v. Willoughby*'s allowance of attorneys' fees as consequential damages arising out

of an attorney's malpractice to *Packard–Bamberger & Co. v. Collier*'s focus on the recovery of attorneys' fees as damages directly and proximately arising from the attorney's breach of fiduciary duty to the plaintiff.

In *In re Estate of Lash,* 169 *N.J.* 20, 776 *A.2d* 765 (2001), decided later that same term,[2] we further refined the rule of *Packard–Bamberger & Co. v. Collier, supra,* when, in an action to recover under a surety bond, we held that

> if a plaintiff has been forced because of the wrongful conduct of a tortfeasor to institute litigation against a third party, the plaintiff can recover the fees incurred in that litigation from the tortfeasor [because t]hose fees are merely a portion of the damages the plaintiff suffered at the hands of the tortfeasor.
> [*Id.* at 26, 776 *A.2d* 765 (citations omitted).]

We further noted that a "[b]reach of fiduciary duty is a tort theory, such that attorneys' fees incurred as a result of that breach may be recoverable as a portion of the plaintiff's damages," *id.* at 27, 776 *A.2d* 765 (citations omitted), and that "the American Rule does not preclude an allowance of reasonable counsel fees where the incurring thereof is a traditional element of damages in a particular cause of action." *Id.* at 33, 776 *A.2d* 765 (citation and internal quotation marks omitted). However, we specifically limited the reach of *In re Estate of Lash* to attorney breach of fiduciary duty malfeasance only, explaining that "the fact that a person owes another a fiduciary duty, in and of itself, does not justify an award of fees *unless the wrongful conduct arose out of an attorney-client relationship." Id.* at 34, 776 *A.2d* 765 (emphasis supplied).

The evolution from *Saffer v. Willoughby, supra* (allowing as permissible consequential damages the recovery of attorneys' fees incurred in the prosecution of an attorney malpractice case), to *Packard–Bamberger & Co. v. Collier, supra* (allowing the recovery of attorneys' fees incurred in the prosecution of an attorney misconduct case based on breach of fiduciary duty principles), to

---

[2] *In re Estate of Lash, supra,* was argued before but decided after *Packard–Bamberger & Co. v. Collier, supra.*

*In re Estate of Lash, supra*[3] (allowing attorneys' fees as part of recoverable damages for attorney malfeasance in an action on a surety bond), ultimately led to *In re Niles, supra,* where we held that "when an executor or trustee commits the pernicious tort of undue influence, an exception to the American Rule is created that permits the estate to be made whole by an assessment of all reasonable costs against the fiduciary that were incurred by the estate." *Id.* at 298–99, 823 *A.*2d 1.

> Our analysis is guided by the overarching principle that
>
> This Court has described the policies undergirding the American Rule as "strong." *N. Bergen Rex Transp., Inc.* [*v. Trailer Leasing Co.,* 158 *N.J.* 561, 569, 730 *A.*2d 843 (1999)]. Our courts have been justifiably circumspect in departing from the [American] rule, doing so only when there is "express authorization by statute, court rule or contract," *Dep't of Envtl. Prot. v. Ventron Corp.,* 94 *N.J.* 473, 504, 468 *A.*2d 150 (1983), or when the interests of equity demand it, *Red Devil Tools v. Tip Top Brush Co.,* 50 *N.J.* 563, 575–76, 236 *A.*2d 861 (1967).
>
> [*In re Estate of Lash, supra,* 169 *N.J.* at 43, 776 *A.*2d 765 (Verniero & LaVecchia, J.J., dissenting).]

Remaining properly tethered to that foundation, we have created limited categories as exceptions to the principle that each party should bear its own costs, including only those instances involving claims against attorneys (for malpractice, misconduct, or malfeasance by way of a breach of fiduciary duty), or when an executor or trustee has committed "the pernicious tort of undue influence."

■ This case invites us to create yet another exception to the American Rule, one that would allow attorney fee shifting whenever a non-attorney executor is removed because of, among other things, breach of a fiduciary duty and bad faith against co-beneficiaries. This is an invitation we ultimately decline to accept. Acknowledging that she was unsuccessful in proving that the decedent's will was the result of undue influence[4] but pointing out

---

3 *In re Estate of Lash, supra,* 169 *N.J.* at 34, 776 *A.*2d 765, explicitly disclaims that it "is not an application, much less an expansion, of *Saffer* and *Packard–Bamberger.*" That disclaimer, however, does not oust *In re Estate of Lash* from its proper position in the developmental continuum of the law regarding attorney fee shifting.

4 Had Katherine established that the decedent's will was the result of undue influence, Peter's performance as executor would have been squarely governed by the holding of *In re Niles, supra.*

that the trial court found Peter's actions after Katherine commenced this will contest to be in breach of his fiduciary duty as an executor and in bad faith against her as a co-beneficiary, Katherine principally argues that it is inequitable to allow her to recover her attorneys' fees only against the estate. According to Katherine, because any such recovery would come from the residuary estate, her status as a 45% beneficiary of the residuary estate simply means that her recovery is limited to only 55% of her attorneys' fee award and, thus, she would not be made whole.

One cannot quarrel with either Katherine's arithmetic or the equitable gloss that arises from Katherine's quandary. That result, however, is compelled by the clear language of *R.* 4:42–9(a)(3), which, under the circumstances present here, allows an award of attorneys' fees "to be paid out of the estate" and not from another source. Given the availability of a specific remedy as provided in our *Rules*—albeit one that, because of the peculiarities of this case, does not, in Katherine's view, make her whole—this case is unlike those where equity demands the fashioning of a remedy in the first instance. A remedy, as ordered by the Appellate Division and now upheld by this Court, exists, and the claim that it is inadequate simply because it is incomplete is insufficient impetus to warrant a further exception to the American Rule, one to which we have repeatedly averted as "a well-established feature of our jurisprudence." *In re Estate of Lash, supra,* 169 *N.J.* at 42, 776 *A.2d* 765 (*citing N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 158 *N.J.* 561, 569, 730 *A.2d* 843 (1999)). We therefore reaffirm New Jersey's "strong public policy against the shifting of counsel fees," *In re Niles, supra,* 176 *N.J.* at 293, 823 *A.2d* 1, and, under the circumstances presented here—in which the allegations against the non-attorney executor involve negligence in the administration of the estate and the claimed bad faith arose only after the will contest was filed—we decline to extend recovery for attorneys' fees. If determined to be appropriate under the facts here, the proper source for recovery remains as set forth plainly in *Rule* 4:42–9(a)(3)—the recovery, if allowed, is "to be paid out of the estate."

### III.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and RIVERA-SOTO—7.

*Opposed*—None.