251 N.J. Super. 467 (1991)
598 A.2d 923
JEROME KATZ AND MARGARET KATZ, PLAINTIFFS-APPELLANTS,
v.
DAVID R. SCHACTER, LINDA SCHACHTER; JOHN BENTLEY; RICHARD HAKIM, MAUREEN HAKIM, ATLAS EXTERMINATING CO.; LESLIE BLOOMFIELD, COAST TERMITE & PEST CONTROL, INC.; JOHN TEN HOEVE, JR.; NEAVES AGENCY; MICHAEL GILMAN; SHARON GILMAN; BARRY KANTROWITZ; BETTY ANN KANTROWITZ; NORMAN MIRNE, ELEANOR MIRNE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1991.
Decided November 1, 1991.
*468 Before Judges MICHELS, O'BRIEN and HAVEY.
Jerome Katz, Appellant argued the cause pro se and submitted pro se briefs.
Alan M. Darnell argued the cause for respondents Sharon Gilman, Betty Ann Kantrowitz and Eleanor Mirne (Wilentz, Goldman & Spitzer, attorneys; Alan M. Darnell, of counsel; Alan M. Darnell and Charles J. Sgro, on the brief).
Joseph K. Cooney argued the cause for respondents Norman Mirne, Michael Gilman and Barry Kantrowitz (Widman & Cooney, attorneys; Joseph K. Cooney, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Plaintiffs appeal from a judgment in favor of defendants Michael and Sharon Gilman, Barry and Betty Ann Kantrowitz, and Norman and Eleanor Mirne. We affirm in part and reverse and remand in part.
*469 Defendants Norman Mirne, Michael Gilman and Barry Kantrowitz are realtors, who in 1974 and 1975 were associated under the firm name of Norman Mirne & Associates (Mirne). Plaintiffs Jerome and Margaret Katz are the owners of a house at 1322 Maple Avenue, Wanamassa, Ocean Township, New Jersey, which they purchased in December 1979[1] from defendants David and Linda Schachter. The Schachters had purchased the home from defendants John and Melinda Bentley in March 1979. The Bentleys had purchased the house from defendants Richard and Maureen Hakim in July 1975. Mirne was involved as real estate broker in the sale of the house from the Hakims to the Bentleys.
In 1974, the Hakims had purchased a new home and were endeavoring to sell the property at 1322 Maple Avenue, without success. In order to assure the Hakims that this house would be sold, Michael Gilman, Barry Kantrowitz and Norman A. Mirne, individually, entered into a contract (which is undated) with the Hakims to purchase 1322 Maple Avenue, with a closing date fixed for June 30, 1975, at a purchase price of $32,000. The contract is also signed by defendants Eleanor Mirne, Sharon Gilman and Betty Ann Kantrowitz. As part of the arrangement, Mirne, Gilman and Kantrowitz leased the property from the Hakims in a lease dated May 1974, at a monthly rental of $3,264.36, which recited that the tenant would purchase the property by July 1, 1975 under the terms of the separate contract. The lease contained a certification and warranty that the property had no termite infestation or damage and that if, after an inspection, any deficiencies were found, the Hakims would be responsible to repair the same up until July 1, 1974, after which the tenant assumed that responsibility. The Mirne Group arranged for a termite inspection by defendant Allstate Exterminating Company, Inc., trading as Atlas Exterminating *470 Co. (Allstate), whose principal was defendant Leslie Bloomfield. Allstate treated the house and billed Hakim $495.75, but was paid $393.71 by Mirne on July 17, 1974, as full payment of the bill.
During the pendency of the lease and contract to purchase between Hakim and Mirne, Mirne found the Bentleys as purchasers for the property. Michael and Sharon Gilman, Barry and Betty Ann Kantrowitz, and Norman and Eleanor Mirne, as sellers, entered into a contract with the Bentleys, as purchasers, dated April 16, 1975, for the purchase of the property at $38,000. However, the Mirne defendants never took title to the property, but rather reassigned their contract to purchase back to the Hakims, who conveyed title directly to the Bentleys. Nevertheless, since the Mirne group had contracted to purchase the property from the Hakims at $32,000, and the Bentleys purchased it for $38,000, the Mirne group made the profit of $6,000. It does not appear whether Mirne received a real estate commission.
The Bentleys obtained a termite inspection of the premises from Abalene Fumigating & Exterminating Co., Inc., which issued a report dated June 26, 1975 to the Bentleys' attorney. Although observing that treatment for the extermination of termites had been performed prior to its inspection, Abalene stated that damage caused by the infestation had not been corrected. Its report set forth the damage which it found to be visible, estimating the cost to repair this damage at between $1,200 and $1,800. Abalene suggested that Allstate be contacted to ascertain what guarantee had been given.
The Bentleys' attorney advised the Mirne group of this report and the estimated cost of treatment and repair. At the insistence of the Bentleys' attorney, Mirne made repairs to the property, which the trial judge found were "cosmetic" in nature. Mirne argues that the repairs were made as real estate agents to sell the property, not as contractors. In addition, Allstate granted a six-month extension of its one-year termite *471 warranty and the Bentleys, apparently satisfied, closed title with the Hakims in July 1975. Thereafter, the Bentleys continued to receive termite inspections and reports from Allstate by Bloomfield, with no report of any termite infestation or termite damage.
In January 1979, the Bentleys entered into a contract with the Schacters for the sale and purchase of the property. During the pendency of this contract, a new termite inspection and report was obtained from Allstate, which affirmatively stated there was no active termite infestation or damage. The closing between the Bentleys and the Schachters took place on March 30, 1979. Shortly thereafter, because of matrimonial difficulties, the Schachters contracted to sell the property to the Katzes. Again, a termite inspection was performed by Allstate, through Bloomfield, which issued a favorable report and warranty to Katz. Allegedly, Katz was assured directly by Bloomfield there were no termite problems. The Katzes also had a relative of theirs, who was a construction code official in a neighboring town, inspect the property. Thereafter, title closed from Schachter to the Katzes and they became the owners of the property.
While attempting to remodel the house, plaintiff discovered termite infestation concealed behind plaster, which was so extensive that emergency measures had to be taken to avoid collapse, for which Katz alleges he expended $10,000. The trial judge found that the termite infestation had caused
such extensive damage to the home ... that all parties and the experts who testified are in agreement that the house is structurally unsound, it must be demolished and a new home erected in its place.
The Katzes filed suit in March 1983 against the Schacters, the Bentleys, the Hakims, Allstate (in several different names), Bloomfield, the Gilmans, the Kantrowitzes, and the Mirnes. Also named as defendants were John Ten Hoeve, Jr., owner of Coast Termite & Pest Control, Inc., successors to Allstate. After a pretrial on July 26, 1985, the matter was tried to the court without a jury.
*472 On May 9, 1986, the trial judge made findings of fact in which he concluded that Katz had relied upon Allstate for termite inspection and the oral representations of Bloomfield, sole owner of Allstate, that there were no termite problems, which he found to be misrepresentations to the detriment of Katz. The judge concluded that Allstate was guilty of consumer fraud and ultimately a judgment was entered against Allstate, which totaled in excess of $290,000, inclusive of treble damages, prejudgment interest, attorneys' fees and litigation expenses. The trial judge entered judgments in favor of the Bentleys and the Schacters against the Mirne group for their fees in defending against plaintiffs' claim.
On Katz's motion filed in this appeal on June 20, 1990, we entered an order on July 31, 1990, directing the Law Division to enter an appropriate money judgment against defendant Leslie Bloomfield, individually, although the trial judge had found that Bloomfield made the representations that he did as a corporate officer of Allstate. Thus, the issue of Bloomfield's liability is no longer a part of this appeal. The balance of the Katzes' appeal is from the dismissal of their claim against the Mirnes, the Gilmans, and the Kantrowitzes.
On this appeal, the Katzes claim the Mirne group, including their spouses, are liable to them for common law fraud, which the trial judge found they had committed, for consumer fraud pursuant to N.J.S.A. 56:8-1, and alternatively, if the Consumer Fraud Act does not apply, seeking a remand to have a jury assess punitive damages against them for common law fraud, and requiring the Mirne group to pay its counsel fees and costs as the court had required the Mirne group to pay with respect to the Bentleys, Schachters and Hakims.
The Katzes state they "completely accept the factual findings" of the trial judge as correct. They simply assert the judge was wrong in his legal conclusions. We disagree.
Although the trial judge found as a fact that the repairs to the house made by Mirne were cosmetic and there was plaster in the termite infested wood, he concluded "that plaster was used by someone, unidentified, to conceal termite damage." Thus, although he found the repairs done by the Mirne group were cosmetic and did not correct the defects which were *473 present, he did not identify the Mirne group as the person using plaster to conceal the termite damage, whom he said was "unidentified." Katz argues that this simply means that the person hired by Mirne to perform the repairs was unidentified, not that the repairs were not done by the Mirnes in an effort to conceal the termite damage. However, this is not what the judge found.
More importantly, even if the judge had found that the Mirne group, through an unidentified agent had used the plaster to conceal the termite damage, his finding of common law fraud by the Mirne group was based upon representations they made to Hakim and Bentley, although he did infer these were intended to be conveyed to subsequent purchasers, including Schachter and Katz. However, he found that the Katzes did not rely upon these misrepresentations to their detriment, but rather upon the representations of Bloomfield on behalf of Allstate. Reliance by a party on misrepresentations made to that party is an essential element of common law fraud. Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624, 432 A.2d 521 (1981); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 564, 483 A.2d 821 (App.Div. 1984). Thus, the trial judge correctly concluded that the Katzes were not entitled to recover from Mirne for the common law fraud, which he found the Mirne group had committed with respect to the Hakims and the Bentleys.
We recognize that in awarding counsel fees to the Schachters, the trial judge appears to have applied the common law fraud theory to the Schachters who, like the Katzes, did not rely on the misrepresentations of the Mirne group, but rather on the misrepresentations of Allstate. The trial judge based this conclusion on our opinion in Dorofee v. Pennsauken Tp. Planning Bd., 187 N.J. Super. 141, 144, 453 A.2d 1341 (App. Div. 1982), in which we said:
[O]ne who is forced into litigation with a third party as a result of another's fraud may recover from the tortfeasor the expenses of that litigation, including counsel fees, as damages flowing from the tort.
*474 We agree with Katz that, if that ruling is correct, Katz may also be entitled to his expenses in bringing this action as a result of the Mirne group's fraud. Not only a defendant, but also "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover ... attorney fees...." Restatement (Second) of Torts § 914 (1977) (emphasis added). The matter will be remanded to the trial judge for reconsideration of this question in light of the judge's determination as to the Schachters, who are in no different position than the Katzes.
The Katzes correctly state that privity is not a condition precedent to recovery under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., since section 19 clearly grants a remedy to "any person who suffers any ascertainable loss." There is no provision that the claimant have a direct contractual relationship with the seller of the product or service. Neveroski v. Blair, 141 N.J. Super. 365, 376, 358 A.2d 473 (App.Div. 1976). However, the allegations of consumer fraud leveled at the Mirne group are for actions taken by them in 1975 when the property was conveyed by the Hakims to the Bentleys. At the time such acts, committed as part of a real estate transaction, were not within the ambit of the consumer fraud statute. The Mirne group had no further role in the subsequent transfers of title.
In Neveroski, we found that, at that time, real estate transactions were not included in the Consumer Fraud Act. The Act did not cover such transactions until the amendment to the Act effective January 19, 1976. In Neveroski, we also concluded that the Governor's statement in conjunction with that amendment, that real estate transactions were already included in the legislation, was unpersuasive. The Katzes' contention that they are entitled to recover against the Mirne group for consumer fraud is clearly precluded by our decision in Neveroski. There is no merit to the Katzes' contention that the language of the Consumer Fraud Act at the time of the discovery of the *475 termite damage should control rather than at the time the acts alleged to constitute consumer fraud were committed.
The trial judge came to proper legal conclusions based upon his findings of fact from adequate, substantial and credible evidence, which the Katzes agree are correct.[2]Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Other theories of recovery suggested by plaintiff in his pro se brief, such as warranties running with the land, were not decided by the trial judge nor properly briefed and argued by the parties, and we conclude have no merit, in any event.
The judgment in favor of defendants on plaintiffs' claim of common law fraud and consumer fraud is affirmed substantially for the reasons given by Judge Marshall Selikoff in his oral decision of May 9, 1986, as expanded at a hearing on June 6, 1986. Insofar as the judge ruled in favor of Mirne on plaintiffs' claim for counsel fees and costs, as had been awarded to the Schacters against Mirne, the judgment is reversed and remanded for reconsideration in light of Dorofee v. Pennsauken Tp. Planning Bd., supra, and Restatement (Second) of Torts, § 914, unless such award is precluded because of the inclusion of counsel fees in the judgment on consumer fraud against Allstate and Bloomfield in order to avoid double collection. We do not retain jurisdiction.
NOTES
[1] In his pro se brief, Katz states that the contract with the Schachters was entered into in October 1983, but in his complaint it recites that they took title on December 5, 1979. The 1983 date appears to be in error.
[2] Although the findings were made initially on May 9, 1986, they were clarified on the hearing of a motion on June 6, 1986, prior to the entry of the judgment.