924 A.2d 592 (2007)
393 N.J. Super. 492
PORT LIBERTE HOMEOWNERS ASSOCIATION, INC.; and Port Liberte Condominium Association I, Inc., a New Jersey Non-Profit Corporation, Plaintiffs-Appellants,
v.
SORDONI CONSTRUCTION COMPANY; Sordoni Skansa Construction Co.; Z.A.K. Construction, L.P., a Partnership; Roman Asphalt Corp.; Dowcon, Inc.; Greene Mechanical Corporation; D.J. Hartnett Co., Inc.; Grandview Waterproofing, Inc.; Waterproofing Systems of N.J., Inc.; Masonry Preservation Systems, Inc.; Novingers, Inc.; Speranza Brickwork; Quality Roofing Co., Inc.; Alumex Corp.; Tuschyn Roofing Co.; Kadco Construction Associates, Inc.; Superior Sheetmetal & Roofing Contractors, Inc.; Three Brothers Roofing Contractors, Inc.; Maximum Air Conditioning & Heating Corp.; Audubon Millwork & Supply; Thiele Construction Co., Inc.; J. Fletcher Creamer & Son, Inc.; Rocket Construction Co.; Azur Iron Works; Dover Elevator Co.; Model Metal Industries, Inc.; Jobin Waterproofing Corp.; Morlot Carpentry, Inc.; Cambridge Drywall & Carpentry; C & D Waterproofing Corp.; Crisdell Construction Corp.; Bad-Mar Corporation; Grinnell, Inc.; Phil Neto Construction Co.; Del Turco Brothers; Renaissance Security Consultants, Inc.; Watts Roofing Co., Inc.; The Ehrenkrantz Group, P.C.; Formglass, Inc.; Fisher Skylights, Inc.; Trinity Installation; Hastings Pavement Co.; S.M. Electric Co.; American Trimstone; Rcrm, Inc. Window And Door Discounters; Lehr Associates; Olko Engineering; AJ Ross Logistics, Inc.; Casteel/USA, Inc.; Active Glass Corporation; Architectural Wood Products; Campbell Painting; Cord Contracting Co., Inc.; William B. Davis, Inc.; Fine Painting And Decorating; Forty Fort Lumber; David Friedland Painting; General Glass and Aluminum Company; Hudson Shatz Paint Co.; Industrial Coatings International; Met Corp., Inc.; Perfect Concrete Cutting Corp.; Price-Berian, Inc.; W.N. Russell & Co.; Seaport Construction, Inc.; United Craftsman; Universal Building Supply; and Whitehouse East Development Corporation, Defendants, and
Dryvit Systems, Inc., Defendant-Respondent, and
Sordoni Construction Company, Defendant/Third-Party Plaintiff,
v.
The Spoerry Group, Inc.; Paul W. Bucha; Howard, Needles, Tammen & Bergendoff; Robert Silman Associates; Geo-Systems, Inc.; Spencer, White & Prentice; Skyland Steel Company; Tnemec Co., Inc.; Tnemec East, Inc.; MCP Coatings, Inc.; MCP Facilities, Inc.; Houck & Co., Inc.; *593 Dryvit Systems, Inc.; Tremco; Peter Corsell Associates; Auburn Bath International; Peter Kastle; Interlocking Pavers, Inc.; Roman Asphalt Corporation; Kilby Management, Inc., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 2007.
Decided June 4, 2007.
*595 Dennis J. Drasco, argued the cause for appellants (Lum, Danzis, Drasco & Positan and Kennedy Wronko & Kennedy, attorneys; Mr. Drasco, Paul A. Sandars, III, Roseland, and E. Richard Kennedy, Sr., of counsel and on the brief).
Andrew P. Fishkin, New York City, argued the cause for respondent (Edwards & Angell, attorneys; Mr. Fishkin and Charles W. Stotter, Short HIlls, of counsel and on the brief).
John Randy Sawyer, argued the cause for amicus curiae Community Associations Institute (Stark & Stark, attorneys, Lawrenceville; Mr. Sawyer and Rachael Costigan, of counsel and on the brief).
Before Judges COBURN, R.B. COLEMAN and GILROY.
The opinion of the court was delivered by
GILROY, J.A.D.
Plaintiffs, Port Liberte Homeowners Association and Port Liberte Condominium Association I, appeal from the November 24, 2004, order of the Law Division granting defendant Dryvit Systems, Inc.'s (Dryvit) motion for summary judgment. The question presented is whether plaintiffs, non-profit corporations charged with controlling and maintaining a condominium's common elements, formed after the misrepresentations or omissions complained of were made, have standing to assert common law and consumer fraud claims against the manufacturer of a product used by the developer in the construction of the common elements. Because we conclude that plaintiffs have sufficient standing, we reverse.
Port Liberte is a residential condominium development in Jersey City, comprised of single-family detached homes, townhomes, and mid-rise buildings, established pursuant to the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -38. The developer and original sponsor of Phase I of the development was Port Liberte Partners (PLP). Defendant Dryvit is a corporation in the business of manufacturing and selling Exterior Insulation Finish System (EIFS)[1] barriers, the cladding used on the Phase I buildings. Defendant Sordoni Construction Company (Sordoni) was the general contractor for the project. Defendant Novingers, Inc. (Novingers), was the subcontractor engaged by Sordoni that installed the Dryvit EIFS on the buildings.
PLP began construction of Phase I in January 1986, when it hired Sordoni as its general contractor. On May 30, 1986, PLP registered the project with the Department of Community Affairs (DCA). In July 1986, PLP chose to install Dryvit's EIFS barrier on the exterior of the Phase I buildings, and on July 17, 1986, Sordoni executed a subcontract with Novingers to install the EIFS. Novingers commenced installation of the EIFS in November 1986, and upon completion a year later, *596 Dryvit issued a three-year warranty on the EIFS cladding.
In the interim, on or about February 26, 1987, PLP filed copies of its Master Deed and Declaration of Covenants with the DCA. On March 10, 1987, the Master Deed and Declaration of Covenants were recorded in the Hudson County Clerk's Office, marking the creation of the plaintiff associations.
Prior to January 1991, PLP had been in complete control of the project. On January 25, 1991, PLP filed for Chapter 11 bankruptcy protection and relinquished control of the project to the associations before 75% of the units had been sold, N.J.S.A. 46:8B-12.1d. After gaining control, plaintiffs discovered defects in the EIFS products, which allegedly had caused significant water and structural damage to the buildings. As a result, plaintiffs commenced this action in June 1992 against Sordoni and other parties who had participated in the construction of the common elements.
After eleven years of litigation, six amended complaints, and eight years of mediation, plaintiffs settled with all parties except Dryvit. On June 23, 2003, plaintiffs filed a motion for leave to file a seventh amended complaint to assert claims for common law fraud and consumer fraud. Plaintiffs alleged that prior to Dryvit negotiating and agreeing to supply the EIFS, it had falsely advertised and represented to PLP and/or Novingers that its EIFS was a complete water barrier system when, in fact, it had knowledge that the EIFS products were defective and would not remain water-impermeable when installed over a non-masonry substrate, even when installed in strict conformity with installation specifications; that Dryvit had made false and misleading misrepresentations knowing that Novingers and PLP would rely thereon in recommending, selecting and purchasing Dryvit's products; and that plaintiffs were third-party beneficiaries of the contract between Dryvit and Novingers. On July 21, 2003, Dryvit filed a cross-motion for summary judgment, seeking dismissal of plaintiffs' sixth amended complaint. Both motions were granted.
On September 24, 2004, Dryvit filed a motion for summary judgment, seeking dismissal of plaintiffs' seventh amended complaint for various reasons, including "that since plaintiffs had not yet even been formally `established,' they could not have been recipients of Dryvit's alleged misrepresentations or omissions, and therefore, they could not have participated in the decision to utilize Dryvit's EIFS at Porte Liberte." On November 24, 2004, the motion judge granted the motion stating:
Nonetheless, in the case at bar, there is and can be no proof offered to establish that Dryvit intended that anyone other than PLP or Sordoni rely upon its representations regarding the EIFS, nor is there or can there be any proof either that the injured party here, . . . plaintiffs, reasonably relied on those representations or sustained damages as a result of such reliance. The wrongdoing complained of here is that Dryvit allegedly made misrepresentations to PLP or Sordoni in order to induce them to use the EIFS. However, there is no proof before the court, nor can there be, to substantiate plaintiffs' claim that the misrepresentations made by Dryvit were made with the intention that they be communicated to others (there are no "others") for the purpose of inducing the "others" to rely upon them. If by "others" plaintiffs have referenced themselves, then certainly, in the context of the case at bar, there is no proof, nor can there be, to substantiate the necessary elements of a claim for common law fraud that Dryvit made a misrepresentation *597 about the EIFS to PLP or Sordoni with the intent that the misrepresentation would then be communicated to the Association, which did [not] even exist at the time, for the purpose that of having this non-existent association rely upon the misrepresentation and then use the EIFS in the construction of the project.
On appeal, plaintiffs argue that the trial court erred in granting summary judgment, determining that plaintiffs did not have standing to pursue fraud claims under the common law and Consumer Fraud Act (CFA)[2] against the manufacturer of an allegedly defective product used in the construction of the common elements of the condominium. Plaintiffs contend that upon PLP's filing for bankruptcy protection and turnover of the condominium, plaintiffs immediately stepped "into the shoes" of PLP. Plaintiffs assert that any misrepresentations and/or omissions of facts made to, or withheld from, PLP are as if they were made to or withheld from plaintiffs, PLP's successors, who are the end-users of the EIFS, and the parties adversely affected by Dryvit's fraud. Dryvit counters that the trial court properly dismissed plaintiffs' common law and CFA claims because, as plaintiffs concede, they did not make or participate in the decision to select Dryvit's products at Port Liberte and did not even exist at the time the decision was made.
A trial court will grant summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c).
On appeal, "the propriety of the trial court's order is a legal, not a factual, question." Pressler, Current N.J. Court Rules, comment 3.2.1 on R. 2:10-2 (2006). "We employ the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
We determine that a condominium association is the intended beneficiary of a developer's actions; therefore, any subcontractor or materialman entering into a contract or supplying a product for use in the construction of the common elements after the developer registers the condominium with the DCA, pursuant to the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56 (PREDFDA), specifically, N.J.S.A. 45:22A-26, is on constructive notice that representations made to, and omissions withheld from, the developer will be deemed as if they were made to, or withheld from, the association, once the association assumes control of the condominium.[3] We hold that a condominium association has standing to assert claims for common *598 law fraud and consumer fraud against third-party contractors and materialmen for defects in the construction of the common elements, regardless of whether the association formally existed at that particular point in time. To say that plaintiffs do not have standing to sue Dryvit because PLP, the now-bankrupt developer, was the party to whom the misrepresentations were made and not plaintiffs, produces an unjust result and is contrary to the legislative scheme permitting a condominium homeowners association to institute suit to recover damages to the common elements. N.J.S.A. 46:8B-14, -15(a), and -16(a).
The relationship between a developer and a condominium association is unique as compared to the relationship between a developer and a single-family homeowner. "A condominium owner is the holder of a hybrid real property interest consisting of `two distinct tenures, one in severalty and the other in common; both types, though well established separately, are inseparably joined in a condominium.'" Brickyard Homeowner's Assn. Mgmt. Cmte. v. Gibbons Realty Co., 668 P.2d 535, 537 (Utah 1983) (quoting 69 A.L.R. 3rd 1148, 1149 (1976)). A developer remains in control of the association until a specific point in time when the developer relinquishes control to the unit owners: "Unit owners other than the developer shall be entitled to elect all of the members of the governing board or other form of administration upon the conveyance of 75% of the units in a condominium." N.J.S.A. 46:8B-12.1a. Until that point, or in the present case, when the developer becomes insolvent, the developer retains control of the association and elects the majority, if not all of its board members. Berman v. Gurwicz, 189 N.J.Super. 89, 97, 458 A.2d 1311 (Ch.Div.1981), aff'd o.b., 189 N.J.Super. 49, 458 A.2d 1289 (App.Div.), certif. denied, 94 N.J. 549, 468 A.2d 197 (1983).
In Berman, the Chancery Court compared the developer's control of an association to that of a majority shareholder's control of a corporation's Board of Directors, quoting a Connecticut case, Governors Grove Condominium Ass'n, Inc. v. Hill Development Corp., 36 Conn.Supp. 144, 414 A.2d 1177, 1183-84 (Super.Ct.1980):
The power to control the board of directors created a fiduciary relationship between [the developer] and the association . . . The relationship described here between [the developer] and the association is directly analogous to that between a majority shareholder and his corporation just as a majority shareholder is a fiduciary for his corporation so was [the developer], by virtue of its power to control the association's board of directors, a fiduciary for the association. . . .
[Berman, supra, 189 N.J.Super. at 97, 458 A.2d 1311].
The Berman court stated that "[i]n a condominium setting the developer who controls the association at the beginning . . . knows that the purchasers of the condominium units will control the association eventually. . . ." Ibid.
The unique relationship between a condominium association and a developer, created by statute, allows an association to step into the developer's shoes when control is passed to the association. N.J.S.A. 46:8B-12.1a. "[T]he clear import, express and implied, of the statutory scheme is that the association may sue third parties for damages to the common elements, collect the funds when successful, and apply the proceeds to repair the property." Siller v. Hartz Mtn. Assocs., 93 N.J. 370, 377, 461 A.2d 568 (1983). Under the Condominium Act, the association "shall be *599 responsible for the administration and management of the condominium and condominium property, including but not limited to the conduct of all activities of common interest to the unit owners." N.J.S.A. 46:8B-12. "Whether or not incorporated, the association shall be an entity which shall act through its officers and may enter into contracts, bring suit and be sued." N.J.S.A. 46:8B-15(a). An association "may assert tort claims concerning the common elements and facilities of the development as if the claims were asserted directly by the unit owners individually." N.J.S.A. 46:8B-16(a).
Although the question presented appears to be one of first impression in New Jersey, the New Hampshire Supreme Court has addressed a similar issue and held that a condominium association has standing to sue for defects that arose prior to the association's formation. Border Brook Terrace Condo. Assn. v. Sumner Gladstone & Assocs., 137 N.H. 11, 622 A.2d 1248 (1993).
In Border Brook Terrace, plaintiffs, a condominium association and a representative of a class of individual unit owners, had sued the defendant developers for defects in the construction of the condominium caused by the defendants prior to the association coming into existence, asserting causes of action sounding in negligence, misrepresentation, and breach of implied and expressed warranties. Id. at 1249. Following a jury verdict, defendants appealed, arguing among other matters, that the plaintiff association, which came into existence after the defects arose, lacked standing to sue. Id. at 1250. The court held that because an association is charged with the "maintenance, repair, renovation, restoration, and replacement of the condominium['s] . . . common areas," the association had standing to sue for defects in the construction of those common areas, regardless of whether the association was in existence at the time the defective work was performed. Id. at 1250 (quoting R.S.A. 356-B:41(I)). The court determined that the condominium statute "says nothing about the timing of the defects or of the unit owners' association's creation, and instead describes the association's `powers and responsibilities . . .' of the common area without limitation. We will not create a qualification to the Association's authority that has not been plainly mandated by the legislature." Ibid.
Also instructive is Orange Grove Terrace Owners Assn. v. Bryant Properties, Inc., 176 Cal.App.3d 1217, 222 Cal.Rptr. 523 (1986). In Orange Grove Terrace, the plaintiff homeowners association filed suit against defendant developer and others for the negligent repair of the condominium's common areas. Id. at 523. Following a jury verdict in favor of the plaintiff, defendant moved for a new trial, arguing that the plaintiff lacked standing to sue for damages that had occurred before the association was formally organized. The trial court granted the motion, determining that the defendants could only be liable to the association for negligence from the date the association took over responsibility for the common areas from the developer to a certain date in the future. Id. at 524.
On appeal, the primary issue presented was "whether a homeowners association has a cause of action for damages to the common areas of a condominium project caused by negligent acts or omissions of the developer occurring prior to formal organization of the association." Id. at 524. In answering the question, the Court of Appeal held that the statute governing condominium associations, Cal. Civ.Code § 1360 to § 1378 (2007) and former Cal. Civ.Proc.Code § 374 (1986), now codified under Cal. Civ.Code § 1375 (2007), did *600 not "suggest that the Association's recovery is limited to damages caused by negligent acts occurring during the Association's existence." Id. at 526. The court determined that even though the association was not in existence during the conversion of the building from an apartment building to a condominium, the developer "could reasonably foresee that the Association, which was obligated by the covenants and conditions . . . to maintain and repair the common areas, and to assess the [unit] owners sums sufficient for that purpose, would be damaged by an injury to the common areas caused by the defendants' negligence" during construction. Ibid. We find the decisions in Border Brook Terrace and Orange Grove Terrace persuasive and supportive of our determination.
Moreover, because the CFA allows "any person who has suffered an ascertainable loss" to sue under the CFA, N.J.S.A. 56:8-19, an association, charged with the maintenance and repair of the common areas of a condominium, that discovers defects in the construction of its common element areas, has standing to pursue a claim under the CFA, even though the misrepresentations or omissions relied upon by the developer arose prior to the creation of the association.
The CFA is "one of the strongest consumer protection laws in the nation." Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994). "Courts have emphasized that like most remedial legislation, the [CFA] should be construed liberally in favor of consumers." Ibid. In a private cause of action, the CFA provides:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.
[N.J.S.A. 56:8-19].
We have previously interpreted the CFA as not requiring direct contractual privity between the consumer and the seller of the product or service, thereby allowing indirect suppliers, "whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer," to be sued under the Act. Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J.Super. 200, 211, 543 A.2d 1020 (App.Div.1988), aff'd, 118 N.J. 249, 571 A.2d 294 (1990). "There is no provision [in the CFA] that the claimant thereunder must have a direct contractual relationship with the seller of the product or service." Neveroski v. Blair, 141 N.J.Super. 365, 376, 358 A.2d 473 (App.Div.1976). However, because each case is fact sensitive, not all subsequent consumers of a product or service have standing to sue under the CFA. Chattin v. Cape May Greene, 216 N.J.Super. 618, 524 A.2d 841 (App.Div.), certif. denied, 107 N.J. 148, 526 A.2d 209 (1987).
In Chattin, plaintiffs, the initial and subsequent purchasers of homes in a development, brought suit against the developer who had advertised in its brochure that its homes came with insulated aluminum windows and doors. Id. at 622, 524 A.2d 841. Although the initial purchasers were allowed to pursue their CFA claims, we held that the subsequent purchasers did not have standing because they had not relied on the representations in the brochure. Id. at 640-641, 524 A.2d 841. See New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 15-16, 842 A.2d 174 (App.Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003) (plaintiffs cannot assert a CFA claim when they had not seen the alleged fraudulent advertisements that they were arguing inflated the cost of prescription *601 drugs); Katz v. Schachter, 251 N.J.Super. 467, 473-474, 598 A.2d 923 (App.Div.1991), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992) (subsequent purchasers of a home cannot sue realtors who misrepresented termite damage to previous homebuyers).
This matter is distinguishable from Chattin, New Jersey Citizen Action and Katz. Plaintiffs are not subsequent purchasers of the condominium property. Under the legislative scheme, they occupy the same role as the developer, having stepped into the developer's shoes after PLP turned over control of the common elements. Here, the condominium was registered with the DCA on May 30, 1986. Novingers and Sordoni subcontracted for the installation of the EIFS in July 1986. Novingers began installation of the EIFS in November 1986 and completed the project in November 1987. Dryvit was on notice that the project was a condominium, and that plaintiffs, the end-users of the EIFS, would ultimately govern the common elements upon completion of the construction. N.J.S.A. 46:8B-12.1a. As such, any misrepresentations made to the developer were essentially made to the associations. Had the developer remained solvent and in control of the association at the time the defects were discovered, the association would have had standing to sue. So should plaintiffs, who now stand in the developer's place. Accordingly, we are satisfied the motion judge mistakenly dismissed plaintiffs' CFA claims.
Plaintiffs' argue next that the dismissal of their common law fraud claims was error. We agree.
To establish a prima facie case of common law fraud, a plaintiff must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997). "Every fraud in its most general and fundamental conception consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith." Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624, 432 A.2d 521 (1981).
A plaintiff need not hear the misrepresentation from the defendant directly for there to be actionable fraud: "[W]here false representations are made to one person with the intent that they be communicated to others for the purpose of inducing the others to rely upon them, they may form the basis of an action for fraud by those others." Metric Investment, Inc. v. Patterson, 101 N.J.Super. 301, 306, 244 A.2d 311 (App.Div.1968); Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 134 A.2d 761 (1957) (defendant made false representation to members of a family with the intention that those family members communicate it to other family members to induce them into selling shares of closely-held corporation at a lower price is enough to support a cause of action for fraud without direct communication between the defendant and the others). However, a plaintiff must prove that he or she was an intended recipient of the defendant's misrepresentations. See Eli Lilly Co. v. Roussel Corp., 23 F.Supp.2d 460, 493 (D.N.J.1998) (plaintiff pharmaceutical company could not assert common law fraud claims against another pharmaceutical company for alleged misrepresentations to the Federal Drug Administration because plaintiff was not the intended recipient of those misrepresentations).
Here, PLP was in control of the project during the construction of the common *602 elements, particularly when any misrepresentations and/or omissions were made or withheld by Dryvit in furtherance of the sale of its EIFS products. All of PLP's decisions pertaining to the construction of the common elements were made knowing that the associations were the intended beneficiaries of the common elements. Any representations or omissions made to or concealed from PLP were made after the project had been registered with the DCA, placing Dryvit on notice that the associations were the intended end-users of its products and the entities that would eventually assume control over the common elements. For reasons previously stated, we determine that PLP's reliance on Dryvit's representations is as if relied upon by the associations; therefore, the trial court should not have dismissed plaintiffs' common law fraud claims.
We reverse the dismissal of plaintiffs' common law fraud and CFA claims and remand to the trial court for further proceedings consistent with this opinion.
NOTES
[1] An EIFS is a multi-component system that serves as one part of a building's exterior envelope.
[2] N.J.S.A. 56:8-1 to -20.
[3] We acknowledge that N.J.S.A. 45:22A-26 is not a notice statute like N.J.S.A. 46:21-1; however, PREDFDA's public policy concerns and its procedural requirements make N.J.S.A. 45:22A-26 akin to a recording statute, thereby placing interested parties on constructive notice of a development's status as a condominium.