SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## Gannett Satellite Information Network, LLC v. Township of Neptune
### (A-63-21) (085719)

**Argued January 4, 2023 -- Decided June 20, 2023**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, plaintiff Gannett Satellite Information Network, LLC (Gannett) sought an award of attorneys' fees arising from its common law right of access claim to Internal Affairs (IA) files pertaining to a former Neptune Township police officer.

In June 2015, Philip Seidle, a police officer employed by Neptune Township, killed his former wife. After the Monmouth County Prosecutor's Office issued a report on the Seidle case that was based in part on Seidle's IA files, Gannett submitted to the Township a request for records pursuant to both the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law, seeking copies of those files. The Township denied the request. Gannett then filed an action in the Law Division seeking a judgment directing the Township to release the requested records, as well as an award of attorneys' fees and other remedies.

The trial court dismissed Gannett's OPRA claim but ordered the release of the contested records, redacted in accordance with guidelines prescribed in the court's opinion, on the sole basis of the common law right of access. The trial court granted a partial fee award.

Before oral argument in the Appellate Division, the Attorney General advised the appellate court that pursuant to the Internal Affairs Policy and Procedures Manual, a redacted version of Seidle's IA files would be released.

The Appellate Division affirmed in part and reversed in part. 467 N.J. Super. 385 (App. Div. 2021). First, it affirmed the trial court's determination that Gannett had no claim under OPRA but was entitled to a redacted version of Seidle's IA files pursuant to the common law. Second, it held that this Court recognized a right to counsel fees in common law right of access cases under certain circumstances in Mason v. City of Hoboken, 196 N.J. 51, 57 (2008). On the facts presented, however, the Appellate Division reversed the trial court's partial award of counsel fees. The Court granted certification on the issue of attorneys' fees. 251 N.J. 465 (2022).

1

**HELD:** The Court affirms as modified the Appellate Division's judgment. The Court declines to adopt an exception to the American Rule for common law right of access claims to public records. Those claims impose significant burdens on municipal clerks and other records custodians; they require a careful balancing of competing interests and the application of an array of factors that can challenge even a seasoned judge. Imposing fee-shifting in this category of cases would venture far beyond the narrow exceptions to the American Rule that New Jersey courts have adopted to date. Accordingly, Gannett is not entitled to an award of attorneys' fees in this appeal.

1. The common law right of access claim at the heart of this case is not governed by OPRA. It is not limited to the categories of information subject to disclosure under OPRA, and the test for access is more complex than the test under OPRA. In order to constitute a public record subject to disclosure under the common law, the item must be a written memorial made by a public officer, and the officer must be authorized by law to make it. In a common law action for disclosure of public records, a court weighs the requestor's interest in the information against countervailing concerns such as privacy and public safety, and it undertakes a careful balancing of relevant factors. See Loigman v. Kimmelman, 102 N.J. 98, 113 (1986); Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 144 (2022). The trial court is the best forum to elicit facts about the parties' interests under the common law and to balance the citizen's right to access against the State's interest in preventing disclosure. (pp. 14-16)

2. In the field of civil litigation, New Jersey courts historically follow the American Rule, which provides that litigants must bear the cost of their own attorneys' fees. Counsel fee awards, as exceptions to the American Rule, fall under four general categories: those granted pursuant to a fee-shifting statute, such as OPRA; those allowed by court rule, a narrow category; a tightly circumscribed common law exception in settings involving breaches of fiduciary duties; and those granted through a contractual agreement. In recognizing those discrete exceptions to the American Rule, the Court has consistently reaffirmed its commitment to New Jersey's strong public policy against the shifting of attorneys' fees. In settings other than the four exceptions, the American Rule remains in force. (pp. 17-21)

3. The Court notes that it did not determine in Mason whether the theory for attorney's fees discussed in that case could apply in common law claims, but rather decides that issue in this appeal. Here, an award of attorneys' fees would not fit within any of the four categories of actions in which such awards are authorized under current law. First, the fee award sought is not authorized by statute. The Court explains in detail why N.J.S.A. 47:1A-6, the fee-shifting provision of OPRA, does not support a fee award to a prevailing party in a claim brought under the common law. Second, the setting of this appeal does not fit within any of the eight

2

categories of actions in which Rule 4:42-9(a) authorizes awards of attorneys' fees. Nor does this appeal fall within the "tightly circumscribed" third exception to the American Rule in which legal fees necessitated by a breach of a fiduciary duty may be deemed an element of damages for that breach. Finally, this action is not rooted in any contractual provision obligating the Township to pay Gannett's legal fees. This action is thus not within or closely interrelated to any existing exception to the American Rule. (pp. 21-25)

4. The Court declines to recognize a new exception to the American Rule for prevailing parties in common law right of access cases. A request for information not subject to disclosure under OPRA, predicated on the common law right of access, is a particularly inappropriate basis for an award of attorneys' fees as an exception to the American Rule. A common law request for information regarding a category of information not addressed in prior case law demands a far more nuanced determination than the question whether the information sought fits within one or more discrete categories identified in OPRA. It requires a records custodian to conduct a fact-sensitive analysis of the competing interests at stake, with or without the advice of counsel, and to undertake the often difficult task of redacting information not subject to disclosure from documents before producing them to a requestor. If a custodian were to release information not properly subject to disclosure in order to avoid the risk of an award of attorneys' fees, individuals' privacy and safety and the public entity's interests could be compromised. In this setting, the continued application of the American Rule serves that Rule's fundamental purposes: to ensure unrestricted access to the courts for all; to promote equity by not penalizing parties for exercising their right to litigate a dispute, even if they should lose; and to promote administrative convenience by obviating the need for a calculation of attorneys' fees. Common law right of access claims are not excluded from the operation of the American Rule, and Gannett is therefore not entitled to an award of attorneys' fees in this case. (pp. 25-27)

5. The Court offers suggestions to ensure the fair and expeditious disposition of requests for information pursuant to the common law right of access, including comprehensive training for records custodians with respect to common law right of access claims and detailed explanations by requestors of their interest in the subject matter of the material sought. (pp. 28-29)

**AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE FASCIALE did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-63 September Term 2021

085719

Gannett Satellite
Information Network,
LLC, d/b/a Asbury Park
Press,

Plaintiff-Appellant,

v.

Township of Neptune,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
467 N.J. Super. 385 (App. Div. 2021).

| Argued | Decided |
|--------|---------|
| January 4, 2023 | June 20, 2023 |

Thomas J. Cafferty argued the cause for appellant
(Gibbons, attorneys; Thomas J. Cafferty, Nomi I. Lowy,
Lauren James-Weir, and Charlotte Howells, of counsel
and on the briefs).

Jonathan F. Cohen argued the cause for respondent
(Plosia Cohen, attorneys; Jonathan F. Cohen, of counsel
and on the briefs, and James L. Plosia, Jr., on the briefs).

CJ Griffin argued the cause for amici curiae American
Civil Liberties Union of New Jersey, Association of
Criminal Defense Lawyers of New Jersey, Libertarians
for Transparent Government, Latino Leadership Alliance

1

of New Jersey, and New Jersey Foundation for Open Government (Pashman Stein Walder Hayden and American Civil Liberties Union of New Jersey Foundation, attorneys; CJ Griffin, of counsel and on the brief, and Jeanne LoCicero and Alexander Shalom, on the brief).

Sara M. Gregory, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park and Raymond R. Chance, III, Assistant Attorneys General, of counsel, and Sara M. Gregory, on the brief).

Carl R. Woodward, III, argued the cause for amici curiae New Jersey State League of Municipalities, New Jersey Institute of Local Government Attorneys, and New Jersey School Boards Association (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Carl R. Woodward, III, of counsel and on the brief).

Michael S. Carucci argued the cause for amicus curiae Municipal Clerks' Association of New Jersey, Inc. (Sills Cummis & Gross, attorneys; Michael S. Carucci and Thomas H. Prol, of counsel and on the brief).

Vito A. Gagliardi, Jr., argued the cause for amicus curiae New Jersey State Association of Chiefs of Police (Porzio Bromberg & Newman, attorneys; Vito A. Gagliardi, Jr., on the brief).

Jeremy A. Chase submitted a brief on behalf of amici curiae The Reporters Committee for Freedom of the Press, Advance Publications, Inc.; The Associated Press; The Atlantic Monthly Group LLC; Courthouse News Service; First Look Institute, Inc.; The Media Institute; The National Freedom of Information Coalition; The National Press Photographers Association; New York Public Radio; The New York Times Company; The News Leaders Association; The News/Media Alliance; The

Online News Association; POLITICO; Pro Publica, Inc.; and The Tully Center for Free Speech (Davis Wright Tremaine, attorneys; Jeremy A. Chase, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

New Jersey law recognizes two distinct procedures by which individuals and entities may seek an order compelling the disclosure of public records. The first is a claim under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, legislation "designed to give members of the public 'ready access to government records' unless the statute exempts them from disclosure." Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 140-41 (2022) (quoting Burnett v. County of Bergen, 198 N.J. 408, 421 (2009)). OPRA is a fee-shifting statute; it provides that "[a] requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." N.J.S.A. 47:1A-6.

The second cause of action available to a requestor seeking access to public records is a claim pursuant to the common law, in which the requestor is not limited to the categories of information subject to disclosure under OPRA. Rivera, 250 N.J. at 143; N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 578 (2017); N.J.S.A. 47:1A-8. In a common law action for disclosure of public records, a court weighs the requestor's interest

3

in the information against countervailing concerns such as privacy and public safety, and undertakes a careful balancing of factors identified in our decisions. See Rivera, 250 N.J. at 143-49; Loigman v. Kimmelman, 102 N.J. 98, 113 (1986).

In this appeal, plaintiff Gannett Satellite Information Network, LLC, d/b/a the Asbury Park Press (Gannett) sought an award of attorneys' fees arising from its common law right of access claim to Internal Affairs (IA) files pertaining to a former Neptune Township police officer convicted of murder. Gannett argued that our courts should grant fee applications in common law right of access cases as an exception to the long-standing American Rule, under which each party pays its own legal fees in civil litigation. Defendant Township of Neptune countered that imposing a fee-shifting rule in common law right of access actions would unduly burden public entities, whose records custodians would be expected to engage in a fact-sensitive and legally complex analysis when they receive a request for disclosure of information under the common law.

The trial court ordered the Township to produce the disputed IA records pursuant to the common law and granted a partial award of attorneys' fees to Gannett but stayed its order pending the Township's appeal. The Attorney General then disclosed the records in redacted form. The Appellate Division

4

held that fees may be awarded in common law right of access cases but viewed such an award to be inappropriate here, citing factors specific to this case. Gannett Satellite Info. Network, LLC v. Township of Neptune, 467 N.J. Super. 385, 412-13 (App. Div. 2021). We granted Gannett's petition for certification, limited to the question of attorneys' fees.

We affirm as modified the Appellate Division's judgment. We decline to adopt an exception to the American Rule for common law right of access claims to public records. Those claims impose significant burdens on municipal clerks and other records custodians; they require a careful balancing of competing interests and the application of an array of factors that can challenge even a seasoned judge. If we were to impose fee-shifting in this category of cases, we would venture far beyond the narrow exceptions to the American Rule that our courts have adopted to date. We accordingly hold that Gannett is not entitled to an award of attorneys' fees in this appeal.

I.

A.

1.

On June 16, 2015, Philip Seidle, a police officer employed by the Township for twenty-two years, shot and killed his former wife with his

5

service revolver. Seidle pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and was sentenced to a thirty-year prison term.

Two years later, after the Monmouth County Prosecutor's Office issued a report on the Seidle case that was based in part on Seidle's IA files, Gannett submitted to the Township a request for records pursuant to both OPRA and the common law, seeking copies of those files. Citing the Attorney General's Internal Affairs Policy and Procedures Manual (IAPP), which includes provisions addressing the confidentiality of IA records, as well as privacy concerns, the Township's municipal clerk denied the request but provided to Gannett an index identifying documents responsive to its request and the basis for the Township's refusal to produce each category of documents.

2.

Gannett filed an action in lieu of prerogative writs and an Order to Show Cause in the Law Division. Gannett demanded a judgment declaring that the Township's refusal to produce Seidle's IA files violated OPRA and the common law, directing the Township to release the requested records, and awarding attorneys' fees and other remedies.

The Township moved to dismiss the action on the ground that Gannett failed to state a claim on which relief could be granted. After conducting an in camera review of the disputed documents, the trial court granted in part and

6

denied in part the motion. Noting that the Legislature had bestowed "the imprimatur of statutory authority on the IAPP," the trial court held that Seidle's IA files were exempt from disclosure under N.J.S.A. 47:1A-9(b), which provides that OPRA "shall not abrogate or erode" any grant of confidentiality established or recognized by statute. The court accordingly dismissed Gannett's OPRA claim.

Applying factors set forth in Loigman, 102 N.J. at 113, the trial court found that facts pertinent to most of the incidents described in the IA files had been disclosed in the Monmouth County Prosecutor's Office's report or in an article published in the Asbury Park Press. The court acknowledged important public policy considerations favoring the confidentiality of IA records but found that factors unique to this matter -- particularly the prior disclosure of much of the information contained in the IA files and the fact that Seidle had voluntarily disclosed information in his IA records to Gannett -- outweighed those confidentiality concerns. The trial court ordered the release of the contested records, redacted in accordance with guidelines prescribed in the court's opinion, on the sole basis of the common law right of access.

Addressing the question of attorneys' fees, the trial court found that Gannett was entitled "to some award of fees because the records would not be disclosed, but for the court's decision." The trial court noted, however, that no

7

bright-line legal standard had been available at the time of the common law request to guide the Township's decision whether to disclose the IA files, and that the court only resolved the issue after a detailed analysis of the facts and an in camera review of the documents. The trial court therefore granted a partial fee award in the amount of $85,665.13. It denied the Township's motion for reconsideration but stayed its order pending appeal.

3.

The Township appealed the trial court's determination on the common law right of access to the disputed records and the court's award of attorneys' fees based on Gannett's common law claim. Gannett cross-appealed, challenging the trial court's dismissal of its OPRA claim.

Before oral argument in the Appellate Division, the Attorney General advised the appellate court that pursuant to the IAPP, a redacted version of Seidle's IA files would be released. The Attorney General later confirmed that the redacted files had been sent to all parties and amici curiae.

The Appellate Division affirmed in part and reversed in part the trial court's judgment. Gannett Satellite Info. Network, 467 N.J. Super. at 391. The appellate court affirmed the trial court's determination that Gannett had no claim to Seidle's IA files under OPRA. Id. at 398-405. It agreed with the trial

8

court that Gannett was entitled to a redacted version of those files pursuant to the common law.  Id. at 405-10.

The Appellate Division reversed the trial court's partial award of counsel fees.  Id. at 412.  In the Appellate Division's view, this Court recognized a right to counsel fees in common law right of access cases in Mason v. City of Hoboken, 196 N.J. 51, 57 (2008), under the "catalyst theory" when the requestor "can demonstrate (1) 'a factual causal nexus between [the] litigation and the relief ultimately achieved'; and (2) 'that the relief ultimately secured by [the requestor] had a basis in law.'"  Id. at 411 (citing Mason, 196 N.J. at 76).  The court held that in a common law right of access case, "attorneys' fees may be awarded under the catalyst theory unless there is 'an apparent, theoretical basis' for declining to apply that theory."  Id. at 412 (quoting Mason, 196 N.J. at 79).

The Appellate Division held that the Township had properly denied Gannett's request for the IA files under OPRA.  Id. at 404-05.  Turning to the application for a fee award under the common law right of access claim, the appellate court observed that there is no unqualified right to such an award and that any such award is "committed to the sound discretion of the trial court, after consideration of all relevant factors."  Id. at 412.  The Appellate Division questioned Gannett's contention that the catalyst theory justified a fee award,

9

given the fact that the Attorney General did not release the files pursuant to a court order but did so "because he decided that disclosure was warranted in the public interest." Id. at 413. It viewed the Township's argument against a common law right to disclosure of the IA files to be made in good faith, and dismissed concerns that its ruling would dissuade other litigants given the circumstances of this case. Ibid. The Appellate Division accordingly reversed the trial court's award of attorneys' fees. Id. at 412-14.

4.

We granted Gannett's petition for certification, limited to the issue of attorneys' fees. 251 N.J. 465 (2022). We maintained the amicus curiae status of the New Jersey State Association of Chiefs of Police (NJSACP), which has participated in this matter since it was before the trial court, as well as the amicus curiae status of those granted leave to participate by the Appellate Division, namely the Attorney General of New Jersey; joint amici the New Jersey State League of Municipalities, the New Jersey Institute of Local Government Attorneys, and the New Jersey School Boards Association (collectively, League of Municipalities); and joint amici the American Civil Liberties Union of New Jersey, the Association of Criminal Defense Lawyers of New Jersey, Libertarians for Transparent Government, Latino Leadership Alliance of New Jersey, and the New Jersey Foundation for Open Government

(collectively, ACLU). In addition, we granted amicus curiae status to the Municipal Clerks' Association of New Jersey, Inc., and to the Reporters Committee for Freedom of the Press, joined by sixteen other media organizations (collectively, Reporters Committee).

## II.

### A.

Gannett argues that fee-shifting in actions brought under the common law right of access promotes equal access to justice and ensures competent representation of litigants seeking public documents pertaining to law enforcement. It asserts that OPRA's mandate that fee awards be available to prevailing parties in "any proceeding" should be read to apply to common law as well as statutory claims. Gannett contends that attorneys' fee awards are a traditional element of damages in public records disputes because OPRA and its predecessor statute, the Right to Know Law, authorized such awards, and that principles of equity support such awards in common law cases.

### B.

The Township asserts that the Appellate Division properly denied Gannett's application for an award of attorneys' fees. It argues that municipal clerks' duties generally entail only ministerial functions, not the fact-sensitive and legally nuanced determinations that a common law right of access claim

11

requires, and that a public entity should not be subject to fee awards if a court ultimately decides that the municipal clerk's determination was incorrect. The Township states that fee awards in common law right of access cases may be appropriate if the public entity has acted in bad faith.

## C.

Amicus curiae the ACLU urges the Court to hold that prevailing parties in common law right of access cases are entitled to attorneys' fee awards, even in the absence of bad faith.

## D.

Amicus curiae the Reporters Committee argues that attorneys' fee awards enable the press to act on the public's behalf and seek access to government documents, and that such awards are vital in an era in which many media entities confront financial challenges that may disincentivize them from pursuing litigation.

## E.

Amicus curiae the Attorney General asserts that New Jersey law generally disfavors fee-shifting, and that the text, structure, and history of OPRA supports a ruling preserving the American Rule in common law right of access cases.

F.

Amicus curiae the League of Municipalities argues that it is unfair to require records custodians to undertake complex analyses under the common law, subject to the threat of attorneys' fee awards if their determinations are found to be erroneous. Amicus asserts that fee-shifting would motivate records custodians to improperly disclose confidential and sensitive information, rather than litigate a dispute, in order to avoid a potential fee award.

G.

Amicus curiae the Municipal Clerks' Association contends that fee-shifting in common law right of access actions would unduly burden municipal clerks and urges the Court to allow fee-shifting only if there is intentional misconduct by a public entity.

H.

Amicus curiae NJSACP argues that the question whether attorneys' fees should be available in common law right of access cases should be left to the Legislature, and that fee awards can have devastating consequences for police departments.

13

## III.

### A.

We review de novo the Appellate Division's decision that courts adjudicating common law right of access claims may, in their discretion, award attorneys' fees to prevailing parties. See Occhifinto v. Olivo Constr. Co., LLC, 221 N.J. 443, 453 (2015) (holding that the trial court's denial of attorneys' fees based on a mistaken interpretation of Rule 4:42-9 was a legal determination subject to de novo review).

### B.

The common law right of access claim at the heart of this case is not governed by OPRA. See N.J.S.A. 47:1A-8 (providing that nothing in OPRA "shall be construed as limiting the common law right of access to a government record, including criminal investigatory records of a law enforcement agency"); Lyndhurst, 229 N.J. at 578 ("OPRA does not compel the outcome under the common law test.").

Indeed, "[t]he test for access under the common law is more complex than the test under [OPRA]." Johnson & Connell, N.J. Open Public Records & Meetings § 16:2 (2023). In order to constitute a public record subject to disclosure under the common law, "the item must be 'a written memorial[] . . . made by a public officer, and . . . the officer [must] be authorized by law to

14

make it.'"  Lyndhurst, 229 N.J. at 578 (alterations and omissions in original) (quoting Nero v. Hyland, 76 N.J. 213, 222 (1978)).  "To gain access to this broader class of materials, the requestor must make a greater showing than OPRA requires," namely, "'(1) the person seeking access must establish an interest in the subject matter of the material; and (2) the citizen's right to access must be balanced against the State's interest in preventing disclosure.'"  Ibid. (internal quotation marks omitted) (quoting Mason, 196 N.J. at 67-68).

In Loigman, we prescribed six non-exclusive factors to guide courts undertaking the balancing test in a common law right of access case:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
>
> [102 N.J. at 113.]

15

In <u>Rivera</u>, we observed that "[s]tatutes and regulations can also factor into the balancing process but do not determine its outcome," and that "[e]xpressions of executive or legislative policy can weigh very heavily in the analysis, but they are not dispositive." 250 N.J. at 144. Noting that the <u>Loigman</u> factors "largely examine only one side of the balancing test -- the need for confidentiality," we held that in disputes over IA records, "[t]he public interest in transparency may be heightened in certain situations depending on a number of considerations" including, among others, "(1) the nature and seriousness of the misconduct"; "(2) whether the alleged misconduct was substantiated"; "(3) the nature of the discipline imposed"; "(4) the nature of the official's position"; and "(5) the individual's record of misconduct." <u>Id.</u> at 147-48 (emphases omitted).

We viewed the trial court to be "the best forum to elicit facts about the parties' interests under the common law and to balance those interests." <u>Id.</u> at 146; <u>see also</u> <u>O'Shea v. Township of West Milford</u>, 410 N.J. Super. 371, 388 (App. Div. 2009) ("The balancing test for access under the common law requires factual determinations that are best left to the trial courts."). We remanded the matter to the trial court for application of the balancing test.

16

C.

"In the field of civil litigation, New Jersey courts historically follow the 'American Rule,' which provides that litigants must bear the cost of their own attorneys' fees." Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016) (citing Litton Indus., Inc. v. IMO Indus. Inc., 200 N.J. 372, 404 (2009) (Rivera-Soto, J., concurring)). We have recognized that "[t]he purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." Ibid. (alteration in original) (quoting In re Niles Trust, 176 N.J. 282, 294 (2003)); see also Neal H. Klausner, Note, The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility, 61 N.Y.U. L. Rev. 300, 304-05 (1986) (explaining that "administrative convenience" is achieved by the American Rule because "[b]y not shifting fees, courts are not burdened with the somewhat arbitrary calculation of the 'reasonable costs' incurred by a prevailing party").

"Counsel fee awards, as exceptions to the American Rule, fall under four general categories." Litton, 200 N.J. at 404 (Rivera-Soto, J., concurring). "The primary and most readily recognized form are those counsel fee awards granted pursuant to a fee-shifting statute." Ibid. OPRA's fee-shifting

17

provision, N.J.S.A. 47:1A-6, is an example of a statutory provision for the payment of legal fees to a prevailing party. The Legislature has included fee-shifting provisions in other statutes as well. See, e.g., N.J.S.A. 10:5-27.1 (authorizing fee awards in certain actions under the Law Against Discrimination, N.J.S.A. 10:5-1 to -50); N.J.S.A. 10:6-2(f) (authorizing fee awards in certain actions brought pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2); N.J.S.A. 34:19-5 to -6 (addressing awards of legal fees in actions brought under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14).

"The second category of counsel fee awards consists of those allowed by court rule." Litton, 200 N.J. at 405 (Rivera-Soto, J., concurring). That category is a narrow one; "our court rules evince New Jersey's strong public policy against shifting counsel fees, and provide, '[n]o fee for legal services shall be allowed in the tax costs or otherwise, except' in eight enumerated circumstances." Innes, 224 N.J. at 592 (citation omitted) (quoting R. 4:42-9(a)). Rule 4:42-9(a) authorizes an award of legal fees in family actions when permitted under Rule 5:3-5(c); an award out of a fund in court; an award in certain probate actions; an award in mortgage foreclosure actions; an award in tax sale certificate foreclosure actions; an award in actions upon a liability or indemnity insurance policy; an award as expressly provided by the court rules

18

with respect to any action; and an award in "all cases where attorney's fees are permitted by statute." R. 4:42-9(a)(1) to (8).

The third category of exceptions "presents a tightly circumscribed common law exception to the American Rule that defies ready description, but may be titled loosely as fiduciary malfeasance cases." Litton, 200 N.J. at 405 (Rivera-Soto, J., concurring); see also Innes, 224 N.J. at 593 (noting that we have "created carefully limited and closely interrelated exceptions to the American Rule" beyond those prescribed by Rule 4:42-9 or by statute) (quoting In re Estate of Vayda, 184 N.J. 115, 121 (2005)).

As its description denotes, that narrow category of decisions arises in settings involving breaches of fiduciary duties. In Saffer v. Willoughby, we recognized that the legal fees of a former client prosecuting an action for legal malpractice against an attorney constitute "consequential damages that are proximately related to the malpractice" necessary to put the client in as favorable a position as the client would have been absent the malpractice. 143 N.J. 256, 271-72 (1996). In Packard-Bamberger & Co. v. Collier, we applied Saffer's principles to an action against an attorney for intentional misconduct arising from the attorney-client relationship, finding such an award consistent with the principle that "a client should be able to recover for losses proximately caused by the attorney's improper performance of legal services."

167 N.J. 427, 443 (2001). We also authorized an attorneys' fee award as an element of damages, recoverable under the terms of a surety bond, in an action premised on an estate administrator's malfeasance. In re Estate of Lash, 169 N.J. 20, 28-35 (2001). And in Niles Trust, we held that in an action against an attorney executor or trustee for undue influence, "an exception to the American Rule is created that permits the estate to be made whole by the assessment of all reasonable counsel fees against the fiduciary that were incurred by the estate." 176 N.J. at 298-99.

As we explained in Innes, those "[d]epartures from the American Rule are the exception." 224 N.J. at 597 (internal quotation marks omitted). Noting that Saffer was rooted "in the unique nature of the attorney-client relationship" and has never applied to a case brought by a non-client, and that Packard-Bamberger, Lash, and Niles Trust "involved fiduciaries who, by their intentional misconduct, violated their fiduciary duties and inflicted damage upon the beneficiaries," we reaffirmed that the decisions in this third category derive from the fiduciary relationships at their core. Id. at 597-98.

The fourth category in which an award of attorneys' fees is authorized as an exception to the American Rule is rooted in contract law. Litton, 200 N.J. at 405-06 (Rivera-Soto, J., concurring). Our law "recognizes that 'a party may agree by contract to pay attorneys' fees,'" but our courts "strictly construe"

20

such provisions "in light of the general policy disfavoring the award" of such fees. Id. at 406 (quoting N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999)).

In recognizing the discrete exceptions to the American Rule, this Court has consistently "reaffirm[ed] its commitment to 'New Jersey's "strong public policy against the shifting of attorney's fees."'" Innes, 224 N.J. at 597 (quoting Estate of Vayda, 184 N.J. at 124). In settings other than the four exceptions, the American Rule remains in force. Ibid.

### D.

Guided by our prior case law, we consider whether the prevailing party in a claim brought under the common law right of access is entitled to an award of attorneys' fees.

### 1.

We do not concur with the suggestion of the trial court and the Appellate Division that in Mason, we decided the question raised by this appeal. See Gannett, 467 N.J. Super. at 411-12 (citing Mason, 196 N.J. at 79). The availability of an award of attorneys' fees to a prevailing party in a common law right of access claim was not the question that the parties litigated in Mason; instead, the Court construed several provisions of OPRA to bar any award of fees to the plaintiff in that case. See Mason, 196 N.J. at 70-79. The

21

Court's brief allusion to the question whether the catalyst theory could apply in common law claims, id. at 79, did not constitute a ruling on the question now before the Court.  We decide that issue in this appeal.

2.

We do not view an award of attorneys' fees in this setting to fit within any of the four categories of actions in which attorneys' fee awards are authorized under current law.

First, the fee award sought in this case is not authorized by statute.  We do not agree with Gannett's contention that the Legislature's reference in N.J.S.A. 47:1A-6 to a fee award to "[a] requestor who prevails in any proceeding" should be construed to support a fee award to a prevailing party in a claim brought under the common law.  N.J.S.A. 47:1A-6 provides that

> [a] person who is denied access to a government record by the custodian of the record, at the option of the requestor, may:
>
> institute a proceeding to challenge the custodian's decision by filing an action in Superior Court which shall be heard in the vicinage where it is filed by a Superior Court Judge who has been designated to hear such cases because of that judge's knowledge and expertise in matters relating to access to government records; or
>
> in lieu of filing an action in Superior Court, file a complaint with the Government Records Council . . . .

> The right to institute any proceeding under this section shall be solely that of the requestor. Any such proceeding shall proceed in a summary or expedited manner. The public agency shall have the burden of proving that the denial of access is authorized by law. If it is determined that access has been improperly denied, the court or agency head shall order that access be allowed. A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee.

The sentences that immediately precede N.J.S.A. 47:1A-6's final sentence make clear that "any proceeding" is not an amorphous reference to legal proceedings in general, or to all proceedings to obtain public records; instead, that language clearly denotes only OPRA proceedings instituted in court or the Government Records Council.

Nor do we concur with Gannett that N.J.S.A. 47:1A-6 generally conveys the Legislature's intent to authorize an award of attorneys' fees in a common law claim. To the contrary, the Legislature made clear that its enactment of OPRA had no effect on the common law right of access. See N.J.S.A. 47:1A-1, -8. OPRA does not expressly or implicitly support attorneys' fee awards in claims premised on the common law right of access. This case is not within the first category of actions in which fee-shifting is prescribed by statute.

Second, the setting of this appeal does not fit within any of the eight categories of actions in which Rule 4:42-9(a) authorizes awards of attorneys' fees. This is not a family action, a probate action, a mortgage foreclosure

23

action, a tax sale certificate foreclosure action, or an action upon a liability or indemnity insurance policy. See R. 4:42-9(a)(1), (3), (4), (5), (6). The award sought here is not within the exception for an award from a fund in court under Rule 4:42-9(a)(2), which "generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation." Henderson v. Camden Cnty. Mun. Util. Auth., 176 N.J. 554, 564 (2003). Finally, the fee award sought in this appeal is neither expressly provided for in any other court rule, R. 4:42-9(a)(7), nor prescribed by statute, R. 4:42-9(a)(8).

This appeal is not within the "tightly circumscribed" third exception to the American Rule -- termed "fiduciary malfeasance cases" -- in which legal fees necessitated by a breach of a fiduciary duty may be deemed an element of damages for that breach. See Innes, 224 N.J. at 595; Litton, 200 N.J. at 405 (Rivera-Soto, J., concurring). In contrast to the legal malpractice action at issue in Saffer, 143 N.J. at 271-72, the attorney misconduct case considered in Packard-Bamberger, 167 N.J. at 443, and the estate and trust administration settings of Estate of Lash, 169 N.J. at 28-35, and Niles Trust, 176 N.J. at 298-99, this case does not remotely involve a breach of a fiduciary duty.

Moreover, we do not agree with Gannett's contention that attorneys' fees should be viewed as a traditional element of damages in a claim brought under

24

the common law right of access because the Legislature provided for such fees in statutory actions brought previously under the Right to Know Law and, now, under OPRA. Were we to accept such an argument, we would expand the narrow fiduciary exception to the American Rule far beyond its logical parameters, and the exception would swallow the Rule.

Finally, this action is not rooted in any contractual provision obligating the Township to pay Gannett's legal fees. See Litton, 200 N.J. at 405-06 (Rivera-Soto, J., concurring). It is not within the fourth category of actions in which fee-shifting is allowed.

Accordingly, this action is not within any category of cases in which our law authorizes awards of attorneys' fees to prevailing parties, and it is not "closely interrelated" to any existing exception to the American Rule. See Innes, 224 N.J. at 593.

### 3.

We decline to recognize a new exception to the American Rule for prevailing parties in common law right of access cases.

A request for information not subject to disclosure under OPRA, predicated on the common law right of access, is a particularly inappropriate basis for an award of attorneys' fees as an exception to the American Rule. The common law right of access standard prescribed in Loigman and Rivera

25

requires a court to balance the interests of government transparency against other important interests at play, which may include compelling privacy and public safety concerns in a given case. See Rivera, 250 N.J. at 146-47; Loigman, 102 N.J. at 113. A common law request for information regarding a category of information not addressed in prior case law demands a far more nuanced determination than the question whether the information sought fits within one or more discrete categories identified in OPRA. It requires a records custodian to conduct a fact-sensitive analysis of the competing interests at stake, with or without the advice of counsel, and to undertake the often difficult task of redacting information not subject to disclosure from documents before producing them to a requestor.[1] If a custodian were to release information not properly subject to disclosure in order to avoid the risk of an award of attorneys' fees, individuals' privacy and safety and the public entity's interests could be compromised.

---

[1] This appeal illustrates the challenge that may face a records custodian at the initial stage of a common law right of access dispute. When Gannett served its OPRA and common law request on the Township, critical developments to the outcome of this case -- including the publication of the Asbury Park Press article disclosing part of the disputed records and the Attorney General's determination that the records should be disclosed in redacted form -- had yet to occur. Were we to award attorneys' fees in this case, we would penalize the Township for failing to anticipate a later court determination premised in part on factors unknown to the records custodian when he declined to produce the IA records.

In this setting, the continued application of the American Rule serves that Rule's fundamental purposes:  to ensure "unrestricted access to the courts" for all; to promote equity by not penalizing parties "for exercising their right to litigate a dispute, even if they should lose"; and to promote "administrative convenience" by obviating the need for a calculation of attorneys' fees.  Innes, 224 N.J. at 592; Niles Trust, 176 N.J. at 294.  When a public entity undertakes the balancing analysis required by our decisions on the common law right of access, it should be permitted to formulate a good-faith legal position on the disputed information and to litigate that position, without the risk of an award of attorneys' fees in the event that a court later rejects it.[2]

We therefore decline to exclude common law right of access claims from the operation of the American Rule.  We hold that Gannett is not entitled to an award of attorneys' fees in this case.

---

[2]  If a court finds that the defense asserted by a public entity in a common law right of access case is frivolous within the meaning of N.J.S.A. 2A:15-59.1, the requestor "may be awarded all reasonable litigation costs and reasonable attorney fees" pursuant to that statute.  Rule 1:4-8 also prescribes a procedure for an award of sanctions for frivolous pleading.  A records custodian's unjustified rejection of a request for records that are clearly within a category of information that this Court has deemed to be subject to disclosure under the common law right of access, see, e.g., Rivera, 250 N.J. at 149-51; Lyndhurst, 229 N.J. at 578-81, may warrant the imposition of sanctions, including an award of attorneys' fees, under that Rule.

4.

We offer two suggestions to ensure the fair and expeditious disposition of requests for information pursuant to the common law right of access.

First, we recommend that municipal clerks and other records custodians for public entities receive comprehensive training with respect to common law right of access claims, and that they be directed to carefully review each request and provide a response that comports with the law.[3] Given the importance of the competing interests and the novelty of the issues that have been raised in common law requests, we also suggest that records custodians be encouraged to seek legal advice when necessary with respect to such requests.

Second, we urge individuals and entities requesting information pursuant to the common law right of access to explain in detail their "interest in the

---

[3] In response to our request for information about the training of municipal clerks on the common law right of access, amicus curiae the Attorney General informed us that the Office of the Attorney General does not train municipal clerks regarding that issue or mandate such training, but has directed law enforcement chief executives to assist in ensuring appropriate disclosures in response to requests for IA records. The Municipal Clerks' Association and the League of Municipalities stated that initial and renewal certifications mandated by law for municipal clerks require training with respect to issues regarding municipal records. They represented that two providers of continuing education for municipal clerks routinely conduct training on the common law right of access and that courses and seminars addressing that issue are available from other providers.

subject matter of the material," <u>Lyndhurst</u>, 229 N.J. at 578 (quoting <u>Mason</u>, 196 N.J. at 67), and to address other factors relevant to the records custodian's determination.  A common law request for access to information that lacks an explanation of the requestor's interest in the information may give rise to an unnecessary dispute, thus wasting the resources of both parties.

IV.

The judgment of the Appellate Division is affirmed as modified.


CHIEF JUSTICE RABNER; JUSTICES SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE FASCIALE did not participate.